Lisa BURROW, a Minor, By and Through her Guardian Ad Litem, Next Best Friends and Parents, David BURROW and Jane Burrow, David Burrow, Individually, and Jane Burrow, Individually, Plaintiffs,

v.

POSTVILLE COMMUNITY SCHOOL DISTRICT, et al., Defendants.

No. C94–1031.

United States District Court, N.D. Iowa, Eastern Division.

June 17, 1996.

Lawrence F. Scalise and Donald L. Carr, II, Smith Schneider Stiles Hudson, Des Moines, IA, for Plaintiff, Lisa Burrow.

Donald H. Gloe, Miller Pearson Gloe Burns Beatty, Decorah, IA, for Defendant, Postville Community School District.

## OPINION AND ORDER

MELLOY, Chief Judge.

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88, 42 U.S.C. § 1983 and Iowa tort law, the Plaintiffs, Lisa Burrow and her Parents, David and Jane Burrow, bring the present action against the Defendants, Postville Community School District ("PCSD"), John Selk, individually and in his official capacity as Superintendent of PCSD, and Dennis White, individually and in his official capacity as Principal of Postville Community High School.[1] The Plaintiffs' complaint alleges that Lisa Burrow was sexually harassed and assaulted by her peers on a continuous basis while she was a student at Postville Commu- nity High School, and that the Defendants were notified repeatedly of such harassment but failed to take any meaningful action to end the harassment and protect Lisa Bur- row. Specifically, the Plaintiffs allege that the Defendants, by their knowing inaction, intentionally discriminated against Lisa Bur- row on the basis of her sex, thus denying her of the benefits of a public education in viola- tion of Title IX of the Education Amend- ments of 1972, 20 U.S.C. §§ 1681–88, as well as denying her of her Fourteenth Amend- ment rights in violation of 42 U.S.C. § 1983. The Plaintiffs have also brought two pendant state claims under Iowa tort law for both intentional and negligent infliction of emo- tional distress. The Plaintiffs' maintain that as a direct result of the Defendants' inaction Lisa Burrow suffered injuries to her body, severe mental and emotional distress, and was essentially forced to graduate early to get out of the hostile sexual environment that she encountered at Postville Community High School. Lisa's Parents also claim to have suffered emotionally and financially from the Defendants' failure to protect Lisa. As a result, the Plaintiffs filed the present action on August 5, 1994, seeking redress for the alleged unlawful conduct of the Defen- dants. The matter presently before the court is the Defendants' Motion for Summary Judgment on all claims (doc. # 12), filed De- cember 7, 1995.

## I. Background

During the Fall of 1991, while Plaintiff Lisa Burrow ("Lisa") was a sophomore at Postville Community High School, Lisa told her Parents the names and addresses of the Postville Community High School students who attended a party which took place at her Parents' farmhouse in their absence and caused over $1,500 in damage to the proper- ty. Lisa's reporting of the individuals who attended the party and were responsible for such damage apparently incited her fellow students at Postville Community High School to launch a host of verbal and physical as- saults against Lisa, many of which took on a sexual nature. This harassing conduct lies at the heart of the present action.

---

1. The Postville Community High School is a pub- lic school operated by the PCSD, a school corpo- ration organized under the laws of the State of Iowa.

Lisa was allegedly sexually harassed on a daily basis by her fellow students (both male and female) beginning sometime during the 1991–92 school year and continuing until January of 1994 when Lisa graduated from high school a semester early. Specific alleged acts which occurred in March, April and May of 1993, as described in the Plaintiffs' complaint and supporting documentation, include the following: students repeatedly called Lisa vulgar names of a sexual nature and yelled sexual obscenities at her, such as "slut," "whore," "bitch," "skank," and "fuckin' tramp"; students repeatedly threw food and spit wads at Lisa, pushed her into her locker, elbowed her and intentionally ran into her in hallways; a male student repeatedly kicked her between her legs in a sexually offensive manner; students stole her book bag and wrote sexual obscenities and threats on her books, her folders, her locker and school bathroom walls; and students repeatedly threatened her life. According to the Plaintiffs, these acts are representative of the type of harassing conduct Lisa endured over the entire period of time that she was harassed. In addition, the supporting documentation submitted by the Plaintiffs contains student-written documents, distributed by students at school, in which Lisa is specifically referred to or alluded to in sexually degrading and/or vulgar terms, such as "BEER SLUT" and "DUMB CUNT SHOULD HAVE DIED." Other evidence submitted includes work written by Lisa which was defaced with obscenities after being posted in the school. Due to the on-going harassment, Lisa left school on a number of days. Ultimately, the harassment prompted Lisa to request permission to graduate a semester early in January, 1994.

As early as 1991, throughout the 1992–93 school year and up through the time of Lisa's early graduation in January of 1994, Lisa and her Parents, Jane and David Burrow, allegedly made complaints to the PCSD Superintendent, Defendant John Selk ("Superintendent Selk"), and the Postville Community High School Principal, Defendant Dennis White ("Principal White"), to inform them of the alleged problems with students sexually harassing and threatening Lisa. The Plaintiffs contend that during the entirety of the 1992–93 school year, Jane Burrow spoke with Superintendent Selk and Principal White at least three times per week to report the on-going harassment of Lisa. Further, in January of 1992 legal counsel retained by Lisa and her Parents wrote to and conversed with Superintendent Selk. During such correspondence with the Burrows' attorney, Superintendent Selk allegedly indicated that he would take care of the problem and put an end to the harassment of Lisa. However, according to the Plaintiffs neither Superintendent Selk, nor Principal White nor anyone else in the PCSD took appropriate or effective action to protect Lisa and correct the situation.

In addition to their direct contact with Superintendent Selk, the Plaintiffs allege that on more than one occasion Lisa spoke about the sexual harassment behaviors with a teacher, Mr. John O'Hara, who in turn communicated Lisa's complaints to Superintendent Selk. In particular, the Plaintiffs point to a computer-generated document, entitled "Postville High School Narked On" (Plaintiff's Ex. 32), which was written by unidentified student(s) and contained sexually degrading epithets in reference to Lisa. After finding out from Lisa about the existence and distribution of such document, Mr. O'Hara tried to discover who was responsible for writing the document and went to Superintendent Selk's office with regard to the document. O'Hara Dep. at 26. At his deposition, Mr. O'Hara testified that he was not aware of any further investigation taken by the school or the PCSD in response to the document. O'Hara Dep. at 27–28.

Lisa also spoke with a Postville Community High School guidance counselor, Mr. David Koopman, on several occasions to discuss the problems with students sexually harassing her and a few times came into his office crying and used his phone to call her mother about the harassment. D. Koopman Dep. at 24. Lisa told Mr. Koopman that one of her reasons for wanting to graduate early was the sexual harassment by her peers. D. Koopman Dep. at 26–28. During his deposition, Mr. Koopman stated that he recalls having several conversations about the

harassment of Lisa with Mr. O'Hara in the Fall of 1993. D. Koopman Dep. at 39–40.

In support of their allegations, the Plaintiffs point out that prior to and during the significant period of time in which Lisa was harassed PCSD failed to adopt and implement a policy prohibiting sexual harassment at its schools and failed to train teachers and students with regard to sexual harassment. In his deposition, Superintendent Selk admitted that prior to October of 1992, the School District had no official policy to deal with cases of sexual harassment (Selk Dep. at 31–33) and that prior to June of 1993, the School District had no grievance procedure for claims of sexual harassment. Selk Dep. at 75–76. Selk further stated that in his opinion Lisa Burrow was subject to sexual harassment while she was a student at Postville Community High School, beginning sometime during the 1991–92 school year. Selk Dep. at 41–42.

From his deposition testimony it appears that in the latter half of the 1991–92 school year Superintendent Selk was aware that Lisa was being harassed by fellow students. Superintendent Selk acknowledged that Mr. Burrow had notified him of the harassment in a telephone conversation and had asked him to do something about it. Selk Dep. at 43–44. Selk further acknowledged that in October of 1992, he was aware of some of the verbal obscenities that female and male students had called Lisa. Selk Dep. at 49–50. Selk stated that at some point he had met with Lisa about some of the harassing conduct. Selk Dep. at 49–50. After receiving two letters from the Burrows' attorney in January 1992, Superintendent Selk had a talk with one of the female students harassing Lisa and that student's parents. According to Superintendent Selk, he also met with some of the female students who had harassed Lisa and their parents at the beginning of the 1992–93 school year. Selk Dep. at 55–56. Aside from the above-mentioned conversations with a few of the responsible students and some of their parents, it appears that no disciplinary action was taken against the students harassing Lisa, nor were any training sessions held to educate students about sexual harassment during the 1992–93 school year.

On June 4, 1993, Lisa and her parents filed a complaint with the Department of Education Office for Civil Rights ("OCR") against PCSD, alleging that Lisa had been the victim of on-going sexual harassment by her peers at Postville Community High School for the last one and a half years, that such harassment had been reported to the School Superintendent, Principal and other teachers, and that as a result of the School's failure to act to stop such harassment Lisa had suffered mental, physical and emotional trauma. The OCR conducted an investigation by phone. Although it is not entirely clear from the evidence submitted thus far, it appears that the OCR found that there were incidents which occurred and constituted harassment of a sexual nature involving Lisa Burrow, and further found that the Superintendent, Principal and teachers had knowledge of harassment of a sexual nature of Lisa Burrow by fellow students beginning in the Fall of 1991 and continuing through May of 1993. Selk Dep. at 85–86. Approximately two months before Lisa graduated in January of 1994, the Postville Community High School held a student assembly on sexual harassment to comply with the suggestions made (or settlement negotiated by) the OCR upon the completion of its investigation. Lisa Burrow Dep. at 19.

## II. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment a court must view all the facts in the light most favorable to the nonmoving party, here the Burrows, and give them the benefit of all reasonable inferences which can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th

Cir.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To successfully defeat the moving party's motion for summary judgment, the nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. Analysis

### A. Title IX

Count One of the Plaintiffs' complaint asserts a cause of action under Title IX, 20 U.S.C. §§ 1681–88. Title IX provides, in pertinent part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681. The Supreme Court has held that Title IX is enforceable through an implied private right of action, *Cannon v. University of Chicago*, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979), and further that such implied right of action supports a claim for monetary damages. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992).

### Mr. and Mrs. Burrow as Plaintiffs

■ One preliminary matter which this court must resolve is whether Plaintiffs David and Jane Burrow, Lisa's Parents, have standing as individuals to assert a claim under Title IX. Neither of Lisa's Parents were students at Postville Community High School nor were they personally excluded from, denied the benefits of or subjected to discrimination under an educational program or activity within the meaning of Title IX. In light of the plain language of the statute, the court finds that the individual Title IX claims of David and Jane Burrow lack merit. *Accord Bosley v. Kearney R–1 Sch. Dist.*, 904 F.Supp. 1006, 1020 (W.D.Mo.1995); *Seamons v. Snow*, 864 F.Supp. 1111, 1116 (D.Utah 1994), *aff'd on other grounds*, 84 F.3d 1226 (10th Cir.1996); *R.L.R. v. Prague Public School Dist. I–103*, 838 F.Supp. 1526, 1530 (W.D.Okla.1993) ("Non-students have no claim under Title IX."). Furthermore, since Lisa Burrow has attained a majority age, she may bring the present action in her own right, making it unnecessary for her Parents to assert Lisa's Title IX claims on her behalf. Accordingly, the court will grant summary judgment on the Title IX claim in Count I to the extent that it is brought by David and Jane Burrow.

### Lisa Burrow's Title IX Claim Against PCSD

Plaintiff Lisa Burrow seeks monetary damages under Title IX against PCSD. It is uncontested that PCSD receives federal financial assistance within the meaning of Title IX. 20 U.S.C. § 1681(a). Lisa alleges that PCSD's failure to take appropriate remedial action to stop the peer harassment against her denied her the benefits of her education on the basis of her sex and subjected her to discrimination in her education on the basis of her sex in violation of Title IX. 20 U.S.C. § 1681(a).

■ In response, the Defendants argue that a Title IX cause of action cannot be based simply upon an allegation that a school district, by its inaction, failed to protect a student from the harassment of other students. Rather, the Defendants contend that in order to state a claim under Title IX against an institution for peer sexual harassment, the Plaintiff must be able to show that by their inaction the Defendants *intended* to discriminate against her on the basis of her sex. The Defendants further argue that the court should grant summary judgment in their favor because Lisa is not claiming that the Defendants personally harassed her or intended that she be harassed and there is no evidence to suggest that the Defendants in-

tended to discriminate against Lisa on the basis of her sex. With the Defendants' characterization of the law, the court essentially agrees; however, the court disagrees with the Defendants' characterization of Lisa's claim and proffered evidence.

In *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court reviewed a case involving a female high school student who alleged that a teacher had sexually harassed and assaulted her and that the school officials, who possessed actual knowledge of the teacher's conduct, had failed to stop the harassment. The Supreme Court recognized in *Franklin* that "[u]nquestionably, Title IX place[s] on ... [public schools] the duty not to discriminate on the basis of sex." *Franklin*, 503 U.S. at 75, 112 S.Ct. at 1037. After recognizing such duty, the Court drew an analogy between Title VII sex discrimination in employment violations and those under Title IX and found that just as a cause of action lies under Title VII " 'when a supervisor sexually harasses a subordinate because of the subordinate's sex,' " a cause of action for damages under Title IX may lie against a school district where one of its teachers sexually harasses or abuses a student. *Franklin*, 503 U.S. at 75, 112 S.Ct. at 1037 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). The *Franklin* Court further reasoned that "Congress surely did not intend for federal moneys to be expended to support the *intentional* actions it sought by statute to proscribe." *Franklin*, 503 U.S. at 75, 112 S.Ct. at 1037 (emphasis added).

*Franklin* addressed the validity of a Title IX claim for monetary damages against a school district for its failure to stop the sexual harassment of a student *by a teacher* despite actual knowledge of the harassment; whereas, the issue presently before the court is whether a student may state a Title IX cause of action against a school district for its failure to stop the sexual harassment of a student *by her peers* despite actual knowl-

edge of the harassment. Thus far, there is a split among the appellate courts that have addressed this latter issue as to what proof is necessary to state a claim against a school district/school board for its failure to respond to and remedy peer-to-peer sexual harassment.

In *Davis v. Monroe County Board of Education*, 74 F.3d 1186 (11th Cir.1996), the Eleventh Circuit upheld a cause of action under Title IX against a school board for knowingly failing to respond to peer sexual harassment of a student.[2] The *Davis* court relied on the analogy between Title IX and Title VII drawn by the Supreme Court in *Franklin* and the subsequent use of *Franklin* by lower courts as authority for applying Title VII standards to student sexual harassment claims against schools under Title IX. *Davis*, 74 F.3d at 1190–92. The *Davis* court also noted the OCR's stated belief that " '[i]f ... [sexual] harassment is carried out by non-agent students, [an educational] institution may nevertheless be found in noncompliance with Title IX if it failed to respond adequately to actual or constructive notice of the harassment.' " *Davis*, 74 F.3d at 1192 (quoting Letter of Findings by John E. Palomino, Regional Civil Rights Director, Region IV (July 24, 1992), Docket No. 09–92–6002, at 2). Pursuant to *Franklin*, the lower courts' interpretation of *Franklin*, and the OCR's findings with respect to peer sexual harassment under Title IX, the Eleventh Circuit applied Supreme Court Title VII precedent to the claim in *Davis* and held that "as Title VII encompasses a claim for damages due to a sexually hostile working environment created by co-workers and tolerated by the employer, Title IX encompasses a claim for damages due to a sexually hostile educational environment created by a fellow student or students when the supervising authorities knowingly fail to act to eliminate the harassment." *Davis*, 74 F.3d at 1193 (citing, inter alia, *Franklin*, 503 U.S. at 74–75, 112 S.Ct. at 1037). The *Davis* court reasoned that where

---

**2.** In *Davis*, the alleged sexual harassment was perpetrated by a fellow fifth grade male student against the female minor plaintiff over a six month period, and involved the male student fondling and attempting to fondle the plaintiff,

and directing offensive language toward her. *Davis*, 74 F.3d at 1188–89. The male student was eventually charged with and pled guilty to sexual battery. *Id.*

an institution receives Federal funding for an educational program and knowingly fails to respond to hostile environment peer sexual harassment of students enrolled in and entitled to benefits under such program, the "harassed student has 'be[en] denied the benefits of, or be[en] subjected to discrimination under' that educational program in violation of Title IX, 20 U.S.C. § 1681(a)." *Davis*, 74 F.3d at 1194.

Based upon Title VII standards of liability for hostile environment sexual harassment, the *Davis* court listed the five elements necessary to state a Title IX claim against a school board for hostile environment peer sexual harassment as follows: "(1) that [plaintiff] is a member of a protected group; (2) that [plaintiff] was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [the plaintiff's] education and create an abusive educational environment; and (5) that some basis for institutional liability has been established." *Davis*, 74 F.3d at 1194. With respect to the fifth element—a basis for institutional liability—the *Davis* court employed Title VII's "agency" standard which holds "employers liable for a hostile environment created by a co-worker where a plaintiff can show that 'the employer knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Davis*, 74 F.3d at 1195 (citing *Henson v. Dundee*, 682 F.2d 897, 905 (11th Cir.1992)); *See* Larson, Employment Discrimination § 46.07[4] at 46–101–46–115.[3] The Title VII standard of liability does not specifically require proof of intent to discriminate on the part of the employer and thus when applied in a Title IX claim against a school district, would only require that the school district "knew or should have known of the harassment" and failed to take appropriate remedial action—not that the school district intentionally failed to take remedial action because of the plaintiff's sex. On this issue, the dissent in *Davis* criticized the majority for using Title VII standards and allowing a Title IX damages claim against the school board for "negligent[ly] . . . failing to intervene," rather than limiting Title IX liability to "intentional conduct" of the school board. *Davis*, 74 F.3d at 1196 (Birch, J., dissenting in part).

Two months after the Eleventh Circuit's opinion in *Davis*, the Fifth Circuit issued an opinion in which the court explicitly noted its disagreement with the analysis of Title IX in *Davis*. *Rowinsky v. Bryan Independent School District*, 80 F.3d 1006 (5th Cir.1996). In *Rowinsky*, a mother brought suit on behalf of her daughters, alleging that her daughters were continually sexually harassed by their peers at grade school and while riding the school bus, and that the school district should be held liable under Title IX for condoning and causing such peer hostile environment sexual harassment.[4] Pursuant to a motion for summary judgment, the district court had dismissed the plaintiff's claim under Title IX on the grounds that there was no evidence that the school district had discriminated against the students on the basis of sex and that the plaintiff had not shown any disparity in the school district's treatment of harassment towards girls and its treatment of harassment towards boys. On

---

**3.** In *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988), the First Circuit ruled that an educational institution could be held liable under Title IX upon a finding that the institution knew or reasonably should have known of the hostile environment sexual harassment perpetrated by the supervisors and co-workers/co-students of the plaintiff who was a surgery resident (student/employee) of the institution. However, since *Lipsett* addressed the issue of peer sexual harassment in the context of a situation in which the plaintiff was both an employee and a student of the Medical School by virtue of her "residency" status, its holding with respect to the institution's liability, while instructive, is not directly on point for a case of straight student-to-student sexual harassment. *See also* *Murray v. New York University College of Dentistry*, 57 F.3d 243 (2d Cir.1995) (refusing to hold the University liable for the harassment of a dental student by a patient where the University had insufficient knowledge of the harassment).

**4.** The alleged harassment which the school administrators were allegedly appraised of in *Rowinsky* included male students swatting the girls' bottoms when they walked down the bus aisle, making comments such as "When are you going to let me fuck you?", calling them offensive names, such as "whore," and grabbing and/or touching their genital area and breasts. *Rowinsky*, 80 F.3d at 1008–1009.

appeal, the Fifth Circuit affirmed, finding that Title IX imposes liability only for the acts of federal grant recipients, e.g., the acts of the school district itself or its agents (including teachers), and does not impose liability for the acts of third parties, e.g., the acts of students. *Rowinsky*, 80 F.3d at 1010–1012, n. 8. Therefore, the court held that in order to state a claim against a school district under Title IX, a "plaintiff must demonstrate that the school district responded to sexual harassment claims differently based on sex." *Id.* at 1016. By way of example, the court stated that "a school district might violate Title IX if it treated sexual harassment of boys more seriously than sexual harassment of girls, or even if it turned a blind eye toward sexual harassment of girls while addressing assaults that harmed boys." *Id.* Through this example, the *Rowinsky* court, in contrast to that in *Davis,* implied that the plaintiff must show some type of disparate treatment between male and female students revealing an intention to discriminate on the part of the school district before the school district could be held monetarily liable for violating Title IX by its knowing failure to rectify peer sexual harassment.

Most recently, the Tenth Circuit confronted the issue of peer-to-peer sexual harassment in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996). *Seamons* involved a male high school student, Seamons, who had been the target of a football locker room assault, during which his fellow teammates forcibly taped him to a towel rack while he was naked, also taping his genitals, and proceeded to bring in a girl whom Seamons had dated to view him in this state. *Id.* at 1229–30. After Seamons informed school officials, including the football coach, of the locker room incident, the coach brought Seamons before the team, accused him of betraying them, and dismissed him from the team for refusing to apologize. The school's response was to cancel the last football game of the season. Subsequently, Seamons was allegedly threatened and harassed by fellow students because he was "branded as the cause of the football team's demise." *Id.* At the principal's suggestion, Seamons eventually transferred to a different high school. While not complaining of the original locker room assault, Seamons alleged that the School District's response to this incident was sexually discriminatory, as evidenced by its suggestions to "take it like a man," its statement that "boys will be boys," its failure to adopt sexual harassment grievance procedures, and its failure to investigate the original incident and discipline the responsible students. *Seamons,* 84 F.3d at 1230–32. Accordingly, Seamons argued that the School District created and tolerated a hostile educational environment in violation of Title IX. *Id.*

In its analysis of the claim, the Tenth Circuit recognized a cause of action under Title IX for hostile environment sexual harassment and cited with approval the five elements required for such a cause of action as stated by the Eleventh Circuit in *Davis.* *Seamons,* 84 F.3d at 1232–33 (quoting *Davis,* 74 F.3d at 1194). Yet, upon reviewing the facts in *Seamons* under the *Davis* standards, the Tenth Circuit only got as far as element three—"that the harassment was 'based on sex.'" *Seamons,* 84 F.3d at 1232. The *Seamons* court found no evidence that the harassment post-dating the original locker room incident was "'sexual' in nature, as defined in the hostile environment context." *Id.*[5] The Tenth Circuit noted that because their analysis stopped with the third element in *Davis,* they did not reach the issue of "what liability, if any, the school district might have for the acts of its students" or "for creating a sexual hostile environment when it was caused by the defendant's mere negligence or gross negligence and not as a result of any deliberate intention to discriminate on the basis of sex." *Id.* at 1233 n. 7.[6] Accordingly, while citing and beginning to

---

**5.** The *Seamons* court stated that "others" (including presumably the students and football coach) "treated Seamons the way they did because they "felt he 'betrayed' the team by reporting the incident to the relevant authorities," and that the School District's cancellation of the game to show disapproval of the original incident, while possibly increasing the hostile treatment of Seamons, could not be said to have exacerbated or created a hostile "sexual" environment for him. *Seamons,* 84 F.3d at 1232–33.

**6.** The *Seamons* opinion made no reference to the *Rowinsky* case.

utilize the *Davis* standards, the Tenth Circuit in *Seamons* avoided taking a stand on the issue of "intent," and the appropriate standard of institutional liability for peer sexual harassment.[7]

Upon a close analysis, it appears that the fundamental disagreement between *Rowinsky* on the one hand and *Davis* on the other, involves the issue of whether a student must prove "intent" to discriminate on the part of the educational institution in order to hold the institution monetarily liable under Title IX for peer sexual harassment, or rather, whether a student may state a claim for "hostile environment" peer sexual harassment using Title VII agency standards to hold the educational institution monetarily liable for its failure to take appropriate remedial action despite knowledge of the harassment.[8] In *Rowinsky*, the court relied on its

conclusion that Title IX was enacted solely pursuant to the spending clause to find that Title IX required proof of "intentional" conduct on the part of the educational institution/recipient of funds before monetary liability could be imposed. *Rowinsky*, 80 F.3d at 1010–1012. In *Davis*, on the other hand, the court did not require proof of "intent" to discriminate on the part of the school district. Rather, as explained above, *Davis* relied on the use of Title VII in *Franklin* and the Title VII model of employer liability for sexual harassment by co-workers to find that an educational institution may be held monetarily liable under Title IX where the institution "knowingly failed to act to eliminate the [hostile environment sexual] harassment." *Davis*, 74 F.3d at 1193.

The few district courts that have addressed claims for peer-to-peer sexual

7. In *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447 (9th Cir.1994), a school official appealed the lower court's ruling that he was not entitled to qualified immunity for violating a duty under Title IX by failing to adequately remedy known peer sexual harassment of the plaintiff. The *Ninth Circuit assumed arguendo that Title IX* applies to peer sexual harassment, but granted the official "qualified immunity" since a duty to prevent peer sexual harassment was not "clearly established" in the case law at the time of the alleged failure to act. *Doe*, 54 F.3d at 1452. The court opined, however, that if the official knowingly failed to respond to peer hostile environment sexual harassment at the then present time, he might not be entitled to such immunity. Because the claim brought against the school itself was not appealed and because the court granted qualified immunity for the claim against the school official, the Ninth Circuit, like the Tenth Circuit in *Seamons*, never reached the issue of what standard of liability to impose upon a school district or its officials for their failure to remedy peer hostile environment sexual harassment.

8. The confusion and disagreement with respect to the issue of "intent" in Title IX actions arise primarily from the following two factors: (1) statutes adopted pursuant to Congress' spending power, as Title IX arguably was, allow recovery only where a plaintiff shows discriminatory intent (*See Guardians Ass'n v. Civil Service Comm'n*, 463 U.S. 582, 599, 103 S.Ct. 3221, 3231, 77 L.Ed.2d 866 (1983) (plurality opinion)); and (2) the Supreme Court's opinion in *Franklin* which, without specifically deciding that Title IX was enacted solely pursuant to the spending clause, arguably indicated that "intentional" discrimination is a prerequisite to holding an edu-

cational institutional monetarily liable under Title IX. *Franklin*, 503 U.S. at 75, n. 8, 112 S.Ct. at 1038, n. 8. Yet, as the dissent in *Rowinsky* pointed out, "[t]he Supreme Court was not entirely clear ... about what it meant in *Franklin* when it said that '[t]he point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award. *See [Pennhurst State School and Hospital v. Halderman*, 451 U.S.] [1, 17, 101 S.Ct. 1531, 1539–40 (1981)]. This notice problem does not arise in a case such as this, in which intentional discrimination is alleged.'" *Rowinsky*, 80 F.3d at 1023 (dissent) (quoting *Franklin*, 503 U.S. at 74–75, 112 S.Ct. at 1037). In the context of the facts in *Franklin* (teacher-to-student sexual harassment), *Franklin* could be read as indicating that damages under Title IX are only available for intentional discrimination, but that respondeat superior liability exists, so that the intentional acts of an agent of the educational institution, such as a teacher, are imputed to the institution itself. *See Doe v. Petaluma City Sch. Dist.*, 830 F.Supp. 1560, 1575 (N.D.Cal.1993). Under such interpretation, confusion and disagreement arise in a case like the present one in which the facts involve peer-to-peer sexual harassment, i.e. non-agent harassment, which does not fall within the respondeat superior scheme of liability. Nonetheless, in the employment context, employers have been held liable under Title VII for co-worker sexual harassment and sexual harassment of employees by non-employees based upon the theory that such "liability is an extension of the employer's duty to maintain a working environment free from unlawful harassment, which duty may require the employer to exercise control over individuals not in its employ." Lex K. Larson, Employment Discrimination § 46.07[4][b] at 46–105 (2d ed. 1993).

harassment under Title IX have, like *Rowinsky*, required proof of intentional discrimination on the part of the school district in order to establish such a claim; however, unlike *Rowinsky* these courts have allowed the trier to infer such intent from the totality of proof, including evidence of the school's failure to prevent or stop the harassment despite actual knowledge, the school's toleration of the harassing behavior and the pervasiveness or severity of the harassment. *See Bosley v. Kearney R–1 Sch. Dist.,* 904 F.Supp. 1006 (W.D.Mo.1995); *Oona R.S. v. Santa Rosa City Schools,* 890 F.Supp. 1452, 1466 (N.D.Cal.1995); *Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560, 1575 (N.D.Cal.1993). For instance, in *Bosley* the court recognized a cause of action against a school district under Title IX for hostile environment sexual harassment created by peers and held that the "plaintiff must show that the school district selected a particular course of action in responding to her complaints of sexual harassment at least in part 'because of' plaintiff's sex." *Bosley,* 904 F.Supp. at 1021. The *Bosley* court then stated, however, that discriminatory intent does not "require proof that unlawful discrimination is the sole purpose behind each act of the defendant being scrutinized.... 'It is, rather, the cumulative evidence of action and inaction which objectively manifests discriminatory intent.'" *Id.* at 1020–21 (citing *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1185 (11th Cir.1983)). Accordingly, the court in *Bosley* held that an "intent to discriminate" could be inferred through proof of the following elements: "1) the plaintiff was subjected to unwelcome sexual harassment; 2) the harassment was based on sex; 3) the harassment occurred during the plaintiff's participation in an educational program or activity receiving federal financial assistance; and 4) the school district knew of the harassment and intentionally failed to take proper remedial action." *Bosley,* 904 F.Supp. at 1023 ("If the finder of fact makes these findings, the finder of fact may infer that defendant intentionally failed to take appropriate remedial action because of plaintiff's gender.").

Similarly, in *Oona R.S.,* the court found that "discriminatory intent" on the part of the school was a necessary element for a Title IX claim of hostile environment sexual harassment created by peers, but then further stated that "[s]uch discrimination may manifest itself in the active encouragement of peer harassment, the toleration of the harassing behavior of male students, or the failure to take adequate steps to deter or punish peer harassment." *Oona R.S.,* 890 F.Supp. at 1469. Likewise, in *Doe* the district court first concluded that Title IX did prohibit "hostile environment sexual harassment" (in addition to "quid pro quo" harassment), noting that *Franklin* appeared to have been a hostile environment case. *Doe,* 830 F.Supp. at 1575. Then, akin to *Rowinsky,* the *Doe* court stated that "no damages may be obtained under Title IX (merely) for a school district's failure to take appropriate action in response to complaints of student-to-student sexual harassment. Rather, the school district must be found to have intentionally discriminated against the plaintiff student on the basis of sex." *Doe,* 830 F.Supp. at 1576. Yet unlike *Rowinsky,* the *Doe* court went on to note that, "[t]he school's failure to take appropriate action ... could be circumstantial evidence of intent to discriminate." *Id.*

Upon careful consideration of the above case law, the language of Title IX and the facts presented in the instant case, this court makes the following conclusions. The Supreme Court's utilization of its Title VII case law to interpret Title IX in *Franklin* strongly indicates that Title VII precedent is appropriate for analysis of hostile environment sexual harassment claims under Title IX. Further, as noted by some of the lower courts, the OCR has similarly relied on Title VII principles in making its informal conclusions that Title IX prohibits educational institutions who receive federal funds from failing to respond to actual or constructive knowledge of peer sexual harassment. *See Davis,* 74 F.3d at 1192; *Doe,* 830 F.Supp. at 1573. Finally, the Supreme Court has previously admonished lower courts to "accord [Title IX] a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982) (quotations omitted). Under the language of Title IX itself, it would appear that

a student is "denied the benefits of, or subject to discrimination under" an educational program on the basis of her sex where she is forced to leave school on several occasions over the course of two years and ultimately forced to graduate early due to the hostile environment created by peer sexual harassment—against which the federally funded school district knowingly failed to take appropriate remedial action. Accordingly, the court finds that Lisa Burrow may bring a Title IX cause of action for damages against PCSD for its knowing failure to take appropriate remedial action in response to the hostile sexual environment created by students at Postville Community High School.

With respect to proof of "intentional discrimination," Lisa concedes that she bears a burden of proving that "the school district selected a particular course of action in responding to her complaints of sexual harassment at least in part 'because of' her sex." Plaintiffs' Memorandum in Resistance to Defendants' Motion for Summary Judgment at 7. While reserving final judgment on the issue, the court will assume for the purpose of the present summary judgment motion that the plaintiff must prove an "intent to discriminate" on the part of the school district in a Title IX claim against the school district for a hostile environment created by known of—yet unchecked—peer-to-peer sexual harassment. In so assuming, however, the court further finds that the Plaintiff may establish such intent through either direct or indirect evidence, and that in the absence of direct evidence, an intent to discriminate on the part of the school district may be inferred by the finder of fact from the totality of relevant evidence, including evidence of the school's failure to prevent or stop the sexual harassment despite actual knowledge of the sexually harassing behavior of students over whom the school exercised some degree of control. In the present case, the totality of relevant evidence from which an intent to discriminate could be inferred includes the following: evidence that the school district knowingly failed to respond appropriately to peer sexual harassment of Lisa despite numerous reports by Lisa, her Parents, her attorney, various teachers and the OCR; evidence that the school district knowingly

failed to implement appropriate sexual harassment policies and grievance procedures; evidence that the school district tolerated the harassment of Lisa by failing to promptly investigate and/or punish students for peer sexual harassment; evidence that school officials characterized the sexually harassing conduct as students "picking on each other;" evidence that the school district failed to remove obscenities and threats scratched onto Lisa's school locker and the school bathroom walls for several months despite numerous requests from Lisa and her Parents; evidence that a member of the school board is the father of one of the students who allegedly participated in the harassment of Lisa; evidence that the school district failed to inquire into Lisa's increasing tardiness and absences from school; and evidence that the school district chose to remove Lisa from the hostile sexual environment and granted her request to graduate early, rather than attempting to eliminate the hostile environment. Accordingly, the court finds that in the present case Lisa Burrow has presented evidence from which the trier of fact could reasonably infer that PCSD intentionally discriminated against her because of her sex when it knowingly failed to respond to the peer sexual harassment of Lisa which created a hostile learning environment for her as student at Postville Community High School.

With respect to the other necessary elements for a claim of peer sexual harassment, the court finds that pursuant to *Franklin* and *Davis* the standards developed under Title VII for hostile employment environment sexual harassment are appropriate. Accordingly, while accounting for the court's assumption that proof of "intentional discrimination" would be required, the court adopts a slightly modified version of the elements laid out in *Davis*, namely: (1) that the plaintiff is a member of a protected group; (2) that the plaintiff was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's education and create an abusive educational environment; and (5) that the

educational institution knew of the harassment and intentionally failed to take proper remedial measures because of the plaintiff's sex. *See Davis,* 74 F.3d at 1194 (citing, inter alia, *Meritor,* 477 U.S. at 66–73, 106 S.Ct. at 2405–09; *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 20–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)); *See also Seamons,* 84 F.3d at 1232–33 (citing the elements listed in *Davis*); *Bosley,* 904 F.Supp. at 1022–23 (citing, inter alia, *Harris,* 510 U.S. at 20, 114 S.Ct. at 370; *Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404; and *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264 (8th Cir. 1993)).

▪▪▪ In the present case, Lisa's proffered evidence clearly establishes the first and second elements as Lisa is a female and was subject to unwelcome sexual harassment in the form of verbal and physical assaults of a sexual nature during her participation in a federally supported educational program. *See Davis,* 74 F.3d at 1194 (citing 29 C.F.R. § 1604.11(a)). With respect to the third and fourth elements, the court finds that the evidence presented thus far establishes a material issue of genuine fact as to whether the harassment Lisa faced was "on the basis of her sex" and was "sufficiently severe or pervasive so as to alter the conditions of [Lisa's] education and create an abusive educational environment." *Davis,* 74 F.3d at 1194. Unlike the facts in *Seamons,* in this case the students' harassment of Lisa could reasonably be viewed as being " 'sexual' in nature, as defined in the hostile environment context" and thus, "on the basis of sex." *Compare Seamons,* 84 F.3d at 1229–31. In the present case, Lisa's peers arguably went beyond harassing her for "betraying" certain students. Lisa has offered documentation of conduct by her peers involving, among other things, students repeatedly calling Lisa vulgar names of a sexual nature and repeatedly yelling sexual obscenities and threats at her, an incident in which a male student repeated-

ly kicked her between her legs in a sexually offensive manner and student-written documents in which Lisa is specifically referred to or alluded to in sexually degrading and/or vulgar terms. Lisa has also proffered the reports of two expert witnesses, in which both experts characterize the harassment that Lisa endured as being of a "sexual nature." Accordingly the court finds that a trier of fact could reasonably find such harassing conduct to be on the basis of sex. With regard to element four, the evidence presented at this stage includes Lisa's documentation of the sexually harassing conduct occurring in 1993, deposition testimony—including that of Lisa, her Parents, Defendant Selk, Mr. O'Hara and Mr. Koopman—which reveals a pattern of harassment beginning in 1991 and lasting until January 1994, expert witnesses' reports and the significant fact that Lisa left school on a number of occasions and ultimately graduated early in part to escape the hostile sexual environment created by her peers at Postville Community High School. Taken as a whole and in a light most favorable to Lisa, this evidence would allow a reasonable trier of fact to find that the harassment complained of over a period of over two years was subjectively perceived by Lisa as abusive and was from an objective view "sufficiently severe or pervasive" such "that a reasonable person would find it hostile or abusive." *Davis,* 74 F.3d at 1194 (citing *Harris,* 510 U.S. at 20–22, 114 S.Ct. at 370–71).

As explained above, in addition to the previous four requirements, *Davis* required that the plaintiff establish a "basis for the institutional liability" and employed Title VII agency standards. *Davis,* 74 F.3d at 1194. Using Title VII standards (or even a higher standard—actual knowledge), Lisa's proof clearly passes muster since the proffered evidence reveals that the school district admittedly had actual knowledge of the harassment.[9] Accordingly, Lisa's case

9. The court notes that in cases of teacher-to-student sexual harassment, a split has begun to develop in the courts as to whether the appropriate standard for institutional liability under Title IX is the Title VII "agency" standard which imposes liability if the employer "knew or should have known of the harassment and failed to take

remedial action," or alternatively, a higher standard which imposes liability only where the institution had "actual knowledge" of the harassment/hostile environment. The Eighth Circuit recently noted this unresolved issue in *S.B.L. v. Evans, et al.,* 80 F.3d 307, 311 (8th Cir.1996), but, upon reconsideration, declined to exercise

would survive summary judgment under *Davis*' standards. However, for the purposes of this motion the court has assumed that the basis of institutional liability is the school district's own intentionally discriminatory conduct in failing to appropriately respond to the harassment of Lisa despite actual knowledge. Thus, the court has incorporated the burden of proving intentional discrimination on the part of the school board into the fifth element, and for the reasons previously stated with respect to the issue of intent, finds that the Plaintiff has created a genuine issue of material fact as to whether the school district by its lack of response (or inadequate response) to the sexual harassment of Lisa by her peers intentionally discriminated against Lisa on the basis of her sex.

In conclusion, the court finds that summary judgment on Lisa Burrow's Title IX claim against PCSD is unwarranted. The court further finds that because a Title IX claim against the school officials in their official capacities is essentially a claim against the school district itself, summary judgment is also unwarranted against Defendants Selk and White in their official capacities.

### Title IX Claim Against Individual Defendants

The next issue to determine is whether the individual Defendants are subject to suit under Title IX in their "individual" capacities. Defendants Selk and White submit the following two theories of defense: (1) Title IX does not encompass actions against individuals; and alternatively, (2) even if a Title IX claim can be maintained against individuals, Superintendent Selk and Principal White are entitled to "qualified immunity" on Lisa's Title IX claim of peer-to-peer sexual harassment brought against them in their individual capacities.

■ With regard to the first defense, in *Franklin* when the Supreme Court recognized an implied cause of action for damages under Title IX, the Court did not indicate whether such an action could be brought against individuals. The majority of lower courts explicitly addressing this issue have held that a damage remedy under Title IX is only available against an "education program or activity receiving Federal financial assistance," not against individuals. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 730 (6th Cir.1996) (Nelson, J., concurring) ("I do not believe that Title IX can appropriately be read as subjecting anyone other than educational institutions to liability for violation of its terms."); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988) ("In implying a cause of action under Title IX, the Supreme Court has considered only actions against the educational institution itself.... Accordingly, the separate liability of the supervisory officials must be established, if at all, under section 1983, rather than under Title IX."); *Nelson v. Temple University*, 920 F.Supp. 633, 635–38 (E.D.Pa.1996) (upon in-depth analysis of issue of individual liability under Title IX, court concludes that no individual liability exists under Title IX); *Clay v. Board of Trustees of Neosho County Community College*, 905 F.Supp. 1488, 1495 (D.Kan.1995) ("Title IX actions may only be brought against an educational institution, not an individual acting as an administrator or employee for the institution"); *Leija v. Canutillo Sch. Dist.*, 887 F.Supp. 947, 952 (W.D.Texas 1995); *Garza v. Galena Park Independent Sch. Dist.*, 914 F.Supp. 1437, 1438 (S.D.Texas 1994); *Seamons*, 864 F.Supp. at 1116; *Doe*, 830 F.Supp. at 1576–

its interlocutory appellate jurisdiction to decide the appropriate standard because the court felt that there were numerous unresolved factual issues which, depending on their resolution by the trier, may eliminate the need to decide whether a strict liability standard is appropriate or whether the school district had knowledge of a hostile environment based on the facts presented. The court makes note of this issue in the present case only to point out that if it is later determined that a basis of institutional liability other than "intentional discrimination" on the part of the school

district is sufficient proof for a claim of student-to-student sexual harassment against the school district, Lisa's claim would nonetheless survive summary judgment. Lisa's theory of intentional harassment does not involve a claim that the school district "should have known of the harassment;" rather, Lisa has presented evidence that PCSD had "actual knowledge" of the harassment—proof which would meet either of the two standards mentioned by the Eighth Circuit in *S.B.L.*

77; *Bougher v. University of Pittsburgh,* 713 F.Supp. 139, 143 (W.D.Pa.), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989); *contra Mennone v. Gordon,* 889 F.Supp. 53, 56–58 (D.Conn.1995). This Court agrees with the majority of lower courts that Title IX does not encompass actions against "individuals." Accordingly, since neither Defendant Selk nor Defendant White is an "education program or activity" as defined by Title IX, the Plaintiffs may not bring an action for damages under Title IX against Defendants Selk or White in their individual capacities.[10]

## B. Section 1983

■ To state an individual claim under 42 U.S.C. § 1983, a plaintiff must show that the Defendants acted "under color of any statute, ordinance, regulation, custom, or usage, of any State," to deprive [the plaintiff] of a right protected by federal law or the United States Constitution. 42 U.S.C. § 1983. Further, the plaintiff has the burden of proving that the constitutional harm suffered was actually and proximately caused by the defendant's conduct. *Chapman v. Musich,* 726 F.2d 405, 407 (8th Cir.1984), *cert. denied,* 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984). In the present case, the Plaintiffs claim that Lisa had a constitutional right to be protected by the Defendants from peer sexual harassment and that the Defendants, while acting under the color of state law, deprived Lisa of such right.

### Lisa's Parents as Plaintiffs

■ As a preliminary matter, the court finds that Lisa's Parents lack standing to bring individual claims under § 1983 based upon a deprivation of Lisa's constitutional rights. Further, Lisa's Parents have not asserted that the Defendants deprived them of any of their *own* constitutional rights. While Lisa's Parents contend that the Defendants' conduct has caused them to suffer "emotional distress," suffering emotional distress does not constitute a violation of a federally guaranteed right. Accordingly, the Defendants are entitled to summary judgement with respect to the individual § 1983 claims of Jane and David Burrow.[11]

### Lisa as Plaintiff

■ To support the existence of a student's constitutional right to protection by a school and its officials against sexual harassment inflicted by other students, the Plaintiffs rely on *Pagano v. Massapequa Public Schools,* 714 F.Supp. 641 (E.D.N.Y.1989). In *Pagano,* the district court found that a school and its officials owe some duty of care to students who are legally required to attend school, and thus allowed a § 1983 claim against the school and its officials to go forward. *Pagano,* 714 F.Supp. at 643–44. However, as recently pointed out by the district court for the Western District of Missouri in *Bosley v. Kearney R–1 Sch. Dist.,* 904 F.Supp. 1006, 1017–1018 (W.D.Mo.1995), the law in the Eighth Circuit is to the contrary.[12]

The Supreme Court has held that, generally, the Fourteenth Amendment of the Constitution does not impose a duty upon state and local governmental entities to protect the life, liberty and property of its citizens against private actors. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (state owed no constitutional duty to protect child from abuse by his father despite claim that "special relationship" existed between the child and the state). However, the Supreme Court and lower courts, including the Eighth Circuit, have also recognized that in certain limited circumstances the Constitution does impose upon the state an affirmative duty with respect to particular individuals when the state creates a "special relationship" with such individuals. *DeSha-*

---

10. In light of the court's ruling that individuals may not be sued as such under Title IX, the court need not address the separate defense of "qualified immunity."

11. Again, since Lisa has attained a majority age, it is unnecessary for Lisa's Parents to assert Lisa's § 1983 claim against the Defendants on her behalf as guardians ad litem, next best friends and parents.

12. In fact, the district court in *Dorothy J. v. Little Rock School District,* 794 F.Supp. 1405, 1412–13 (E.D.Ark.1992), *aff'd,* 7 F.3d 729 (8th Cir.1993), explicitly disagreed with *Pagano.*

ney, 489 U.S. at 189, 109 S.Ct. at 1004; Dorothy J. v. Little Rock School District, 7 F.3d 729, 732 (8th Cir.1993); D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir.1992) (en banc), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). For instance, when the state takes individuals into custody against their will, making them wholly dependant on the state for their care, as for example, with incarcerated individuals and those involuntarily committed to a mental institution, the state creates such a "special" or "custodial" relationship and corresponding duty of care. DeShaney, 489 U.S. at 199–200, 109 S.Ct. at 1004–1005; Dorothy J., 7 F.3d at 732.

In Dorothy J., the Eighth Circuit held that the relationship between a student and a public school does not fall within the "special" or "custodial" relationship category. Dorothy J., 7 F.3d at 732. The Eighth Circuit reasoned that "state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates or to the voluntarily institutionalized." Dorothy J., 7 F.3d at 732 (citations omitted). Accordingly, the Eighth Circuit held that the defendant school district in Dorothy J. had no duty of care to protect a mentally retarded high school student from a sexual attack by another student while at school. Id.[13]

This court is bound by the Eighth Circuit precedent laid down in Dorothy J., as was the court in Bosley when it held that under Eighth Circuit case law "compulsory school attendance does not create the custodial relationship necessary to impose constitutional liability on the defendant school district for failing to protect [the plaintiff] against alleged sexual harassment by her fellow students." Bosley, 904 F.Supp. at 1018 (citing Dorothy J.). Accordingly, the court finds the Defendants were not under an affirmative constitutional duty to protect Lisa from the peer sexual harassment she encountered at Postville Community High School. Further, contrary to the Plaintiffs' suggestion, the Defendants' knowledge of the harassment does not change this result for "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help [her], but from the limitation which it has imposed on [her] freedom to act on [her] own behalf," i.e., the "special relationship." DeShaney, 489 U.S. at 200, 109 S.Ct. at 1005–1006 (citations omitted); see also Bosley, 904 F.Supp. at 1018 (rejecting a similar argument based upon this quote from De-Shaney). Thus, the court is not persuaded by the Plaintiffs' argument based upon Pagano that a duty was somehow created by the level and numerosity of complaints to the School. Accordingly, the Defendants are entitled to summary judgment with respect to the Plaintiffs' § 1983 claims.[14]

13. In addition to the Eighth Circuit, other appellate courts have also concluded that schools and their officials do not bear a constitutional duty to protect students from the action or inaction of private third parties. See Black v. Indiana Sch. Dist., 985 F.2d 707, 713–714 (3d Cir.1993) (students molested by private school bus driver); Maldonado v. Josey, 975 F.2d 727, 731–33 (10th Cir.1992) (student strangled in cloak room); D.R., 972 F.2d at 1369–73 (public high school students allegedly molested by other students); Spivey v. Elliott, 41 F.3d 1497 (11th Cir.1995) (held that it was not clearly established that school officials had a constitutional duty to protect student from sexual assault by a fellow student).

14. The court notes that even if it were to recognize at this time the existence of a constitutional duty on the part of schools and school officials to protect students from peer sexual harassment, the individual Defendants would nevertheless be entitled to "qualified immunity." Under the

principle of qualified immunity "[g]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see also Wood v. Strickland, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (holding that school administrators sued in their individual capacities may assert defense of qualified immunity in a § 1983 action). Immunity attaches if the official's conduct is objectively reasonable "as measured by reference to clearly established law." Davis v. Scherer, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034,

## C. Pendant State Claims

The Plaintiffs' state law tort claims for intentional and emotional distress damages are also based on the Defendants' inaction with respect to the peer sexual harassment of Lisa.

### Intentional Infliction of Emotional Distress

■ While Iowa law recognizes a claim for intentional infliction of emotional distress, to establish such a claim the plaintiff must show the following elements:

(1) Outrageous conduct by the defendant[s]; (2) the defendant[s]' intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) The plaintiff[s] suffering severe emotional distress; and (4) Actual and proximate causation of the emotional distress by the defendant[s]' outrageous conduct.

*Millington v. Kuba,* 532 N.W.2d 787, 793 (Iowa 1995) (quoting *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976)). The Iowa Supreme Court has defined "outrageousness" in this context as encompassing only conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Northrup v. Farmland Industries, Inc.,* 372 N.W.2d 193, 198 (Iowa 1985) (quoting Restatement (Second) of Torts § 46 comment d). The Iowa Supreme Court has further explained that "[i]t is for the court to determine in the first instance, as a matter of law, whether the conduct complained about may be reasonably regarded as outrageous." *Northrup,* 372 N.W.2d at 198.

■ In the present case, the Defendants characterize their conduct as "passive negligence" and argue that such inaction in failing to protect Lisa from the harassment of her peers does not rise to the level of "outrageousness" as defined in Iowa case law. The court agrees. While not condoning the Defendants' failure to act—be it intentional or "passive negligence"—the court finds that as a matter of law it is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Accordingly, the Defendants are entitled to summary judgment on the Plaintiffs' state claim of intentional infliction of emotional distress.

### Negligent Emotional Distress

■ In general, Iowa law recognizes a claim of negligent infliction of emotional distress only in cases where the plaintiff has suffered some "physical harm." *Lawrence v. Grinde,* 534 N.W.2d 414, 420 (Iowa 1995). "An exception to the denial of emotional distress damages in negligence actions unaccompanied by physical harm exists 'where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm.'" *Id.* (quoting *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990)). In *Lawrence v. Grinde,* the Iowa Supreme Court noted that it had previously recognized both a duty to use ordinary care to avoid causing emotional harm and thus, an exception to the general requirement of physical injury in a claim of negligent infliction of emotional distress in the following four situations: (1) medical malpractice resulting from the negligent examination and treatment of a pregnant woman and premature fetus associated with the death of the fetus; (2) distress experienced by a son when he observed the negligence of another cause injury to his mother; (3) the negligent delivery of a telegram announcing the death of a loved one; and (4) the negligent performance of a contract to perform funeral services. *Lawrence,* 534 N.W.2d at 421.

■ The Defendants argue that the neither Lisa nor her Parents have suffered any physical harm as a result of the Defendants' conduct and thus their claims fall outside of the general rule for claims of negligent infliction of emotional distress. Further, the Defendants contend that the Plaintiffs' situation does not come within any of the four exceptions recognized by the

3039, 97 L.Ed.2d 523 (1987). Under the current case law, a "constitutional" duty on the part of schools and school officials to protect students from peer sexual harassment is not "clearly established."

Iowa Supreme Court to date.[15] Taking the Plaintiffs' proffered evidence in a light most favorable to the Plaintiff, the court finds that there is a genuine material issue with respect to whether Lisa has suffered physical harm due to the Defendants' inaction in failing to prevent students from physically assaulting Lisa, including pushing her into lockers, running into her in the school hallways and kicking her between her legs. Accordingly, summary judgment is not warranted with respect to Lisa's individual state law claim of negligent infliction of emotional distress. In contrast, the court finds that Lisa's Parents suffered no physical harm due to the Defendants' inaction and further, do not fall within any of the exceptions to the requirement of physical harm because, despite their contentions, there is not sufficient evidence that they personally witnessed the incidents of harassment against Lisa which occurred at Postville Community High School.

### Punitive Damages

The Plaintiffs are not entitled to recover punitive damages against PCSD. Section 670.4(5) of the Iowa Code expressly exempts a school district from punitive damages. Further, PCSD has not waived its governmental immunity for punitive damages. Thus, PCSD is immune from punitive damages and is entitled to summary judgment on the Plaintiffs' claim for such relief, as stated in Count III.

Accordingly, It Is Ordered:

(1) The parties' request for oral argument is denied.

(2) Defendants' Motion for Summary Judgment on all claims brought in Counts I, II, III and IV by David and Jane Burrow as individuals is granted.

(3) Defendants' Motion for Summary Judgment on Lisa Burrow's Title IX claim (Count I) against Defendant Postville Community School District and Defendants Selk and White in their official capacities is denied.

(4) Defendants' Motion for Summary Judgment on Lisa Burrow's Title IX claims (Count I) against Defendants Selk and White in their individual capacities is granted.

(5) Defendants' Motion for Summary Judgment on Lisa Burrow's § 1983 claims (Count II) against all Defendants is granted.

(6) Defendants' Motion for Summary Judgment on Lisa Burrow's pendant state law claim of intentional infliction of emotional distress (Count III) is granted.

(7) Defendants' Motion for Summary Judgment on Lisa Burrow's pendant state law claim of negligent infliction of emotional distress (Count IV) is denied.

(8) Defendants' Motion for Summary Judgment on Lisa Burrow's claim for relief in the form of punitive damages against Defendant Postville Community School District is granted.

Done and so ordered.

---

15. In their resistance, the Plaintiffs cite *Poulsen v. Russell*, 300 N.W.2d 289 (Iowa 1981), and argue that a claim of emotional distress does not have to be physically manifested where it is extreme or severe. Plaintiffs' Brief in Resistance to the Defendants' Motion for Summary Judgment at 20. The Plaintiffs are correct to a certain extent, but seemingly confuse a cause of action for infliction of emotional distress based upon intentional conduct and one based on negligent conduct. In a claim of *intentional* infliction of emotional distress, such as in *Poulsen*, one element that the plaintiff must prove is "severe or extreme emotional distress," which need not manifest itself physically. *Poulsen*, 300 N.W.2d at 296–97. However, as discussed above, having determined that the Plaintiffs could not establish the first element, "outrageous conduct by the defendant[s]," the court did not even reach the question of whether the emotional distress alleged was "severe or extreme."