**Heather WRIGHT, a Minor, By and Through her Guardian Ad Litem, Sandi WRIGHT, Plaintiff,**

v.

**MASON CITY COMMUNITY SCHOOL DISTRICT, et al., Defendants.**

No. C 94–3056.

United States District Court, N.D. Iowa, Central Division.

Aug. 27, 1996.

William B. Serangeli, Donald L. Carr, II, Des Moines, IA, for plaintiff.

Elizabeth G. Kennedy and H. Richard Smith, Des Moines, IA, for defendants.

### ORDER

JARVEY, United States Chief Magistrate Judge.

This matter comes before the court pursuant to the defendant's June 17, 1996 combined motion for judgment as a matter of law and motion to reconsider the ruling on defendant's motion for summary judgment (docket number 65). The plaintiff filed a resistance to the defendant's combined motions on July 1, 1996 (docket number 69). The defendant's motion follows the entry of judgment for plaintiff in the amount of $5,200 following a jury trial that commenced on June 3, 1996. The court grants the defendant's motion for judgment as a matter of law.

This case presented some of the most difficult legal questions and some of the most interesting social issues that this court has yet faced. The plaintiff was raped by her ex-boyfriend in junior high. She pressed charges. Because she pressed charges, the students at her high school unmercifully tormented her by calling her names such as "whore," "bitch," and "slut." Plaintiff was humiliated by graffiti and was physically accosted. The harassment was done primarily by other female students and was directed not only at the plaintiff but at a boy who had the courage and compassion to take the plaintiff to the prom. It was an incredible example of how cruel teenagers can be to one another. The question for this court is whether a school district should be responsible to the student for damages when they knowingly fail to stop sexual harassment. Given the enormous social implications for students, schools, and parents, this court wishes that Congress would step in and simply tell us whether it intended to make school districts responsible for the payment of damages to students under these circumstances. Knowing that that will not occur, the court does its best to decipher Congressional intent.

The plaintiff, Heather Wright, brought this action against the Mason City Community School District, its school board and employees alleging that she had been subjected to sexual harassment by students at the Mason City High School. The case was submitted to the jury on the fifth day of trial. The jury returned a verdict in favor of the plaintiff and against the Mason City Community School District finding that Heather Wright had been subjected to sexual harassment, that the school district failed to take prompt remedial action reasonably calculated to end the harassment and that the plaintiff suffered damages in the amount of $5200 for future medical expenses. The jury awarded nothing for past medical expenses or for past or future emotional distress. All claims against the individual defendants were either voluntarily dismissed by the plaintiff prior to trial or by the court because of qualified immunity. The defendant Mason City Community School District moves for judgment as a matter of law primarily on the ground that the plaintiff has failed to establish that the school district intentionally discriminated against her on the basis of her gender.

### MOTION FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50 provides for a post-trial motion for judgment as a matter of law, in relevant part, as follows:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought

and the law and the facts on which the moving party is entitled to the judgment.

(b) Renewing Motion for Judgment after Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may ... if a verdict was returned ... allow the judgment to stand, ... order a new trial, or ... direct entry of judgment as a matter of law.

■ Under *Fed.R.Civ.P.* 50(b), a district court may not consider a litigant's post-trial motion for judgment as a matter of law on any claim unless the movant previously moved for judgment on that claim at the close of all evidence pursuant to *Fed.R.Civ.P.* 50(a). *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 197 (8th Cir. 1995).

■ If a litigant has preserved the right to a post-trial motion for judgment as a matter of law on a claim, the district court must decide whether there is sufficient evidence to support a jury verdict. *Smith v. World Ins. Co.*, 38 F.3d 1456, 1460 (8th Cir. 1995) (quoting *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992)). To do so, the court must view the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *Pence*, 961 F.2d at 779. The court may sustain a motion for judgment as a matter of law only if "all the evidence ... point[s] one way and ... [is] susceptible of no reasonable inference sustaining the position of the non-moving party." *Id.* Thus, the court must (a) consider the evidence in the light most favorable to the prevailing party; (b) assume that the jury resolved all conflicts of evidence in favor of that party; (c) assume as true all facts

which that party's evidence tended to prove; (d) give that party the benefit of all favorable inferences which may reasonably be drawn from the proved facts; and (e) deny the motion if, in light of the above, reasonable jurors could differ as to the conclusions that could be drawn from the evidence. *Farley v. Henson*, 11 F.3d 827, 831 (8th Cir.1993); *McGee v. South Pemiscot Sch. Dist. R–V*, 712 F.2d 339, 343 (8th Cir.1983).

## *LIABILITY FOR SEXUAL HARASSMENT UNDER TITLE IX*

The defendant moves for judgment as a matter of law on the issue of its liability under Title IX for peer student sexual harassment. The defendant contends that plaintiff failed to show that the defendant *intentionally* discriminated against the plaintiff on the basis of sex. For the reasons stated below, the court grants the defendant's motion for judgment as a matter of law due to plaintiff's failure to establish an intent to discriminate on the part of the school district.

### A. *Title IX of the Education Amendments of 1972*

■ Title IX prohibits discrimination on the basis of gender in educational programs and activities receiving federal financial assistance:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving financial assistance....

20 U.S.C. § 1681(a) (1995). Courts have interpreted Title IX to prohibit gender discrimination against students enrolled in federally supported educational programs and employees involved in such programs. *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (1995). Under Title IX, an aggrieved individual has an implied right of action, *see Cannon v. University of Chicago*, 441 U.S. 677, 688–89, 99 S.Ct. 1946, 1953–54, 60 L.Ed.2d 560 (1979), for both injunctive relief and money damages, *see Franklin v.*

*Gwinnett County Public Schools,* 503 U.S. 60, 71–73, 112 S.Ct. 1028, 1035–37, 117 L.Ed.2d 208 (1992). Moreover, the Supreme Court has stated that if courts are to give Title IX "the scope that its origins dictate, [they] must accord it a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1917–18, 72 L.Ed.2d 299 (1982).

### B. Actionable Peer-to Peer Sexual Harassment Under Title IX

■ In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court considered a Title IX claim for monetary damages against a school district for its failure to stop the sexual harassment of a student by a teacher. The plaintiff in *Franklin* alleged that she had been sexually harassed by her high school teacher and that the school district possessed actual knowledge of the teacher's behavior, but took no action to stop the harassment. The Court acknowledged that "[u]nquestionably, Title IX place[s] on ... [public schools] a duty not to discriminate on the basis of sex." *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037. The Court then drew an analogy between a claim for sexual harassment against a school district under Title IX and a sexual harassment claim against an employer under Title VII. The Court held that just as Title VII creates a cause of action for discrimination on the basis of sex "when a supervisor sexually harasses a subordinate because of the subordinate's sex," Title IX creates a cause of action against a school district when one of its teachers sexually harasses a student. *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). Thus, the Court acknowledged that a student could state a claim for monetary damages for a school

district's violation of Title IX by alleging that the school district intentionally failed to intervene and put a stop to the harassment. The Court reasoned that "Congress surely did not intend for federal moneys to be expended to support the *intentional* actions it sought by statute to proscribe." *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037 (emphasis added).[1]

Prior to the Supreme Court's decision in *Franklin,* the denial of financial aid was the only remedy available to a Title IX plaintiff. This limited early Title IX lawsuits to claims challenging discriminatory practices in athletic programs and admission policies. *See Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186, 1190 (1996). The Court's unanimous decision in *Franklin* to allow monetary damages for intentional violations of Title IX under what appeared to be a "hostile environment" theory of sex discrimination led to an increasing number of sex discrimination claims against educational institutions brought by both employees and students. *Davis,* 74 F.3d at 1190. An increasing number of student plaintiffs have presented federal courts with the issue of whether Title IX encompasses a claim for money damages against a school district for failing to intervene when it has actual knowledge of sexual harassment by the student's peers. Resolution of this issue has yielded conflicting opinions in the appellate courts as to what proof is necessary to state a claim for money damages against a school district for its failure to remedy peer-to-peer sexual harassment.

In *Davis v. Monroe County Board of Education,* 74 F.3d 1186 (11th Cir.1996), the Eleventh Circuit Court of Appeals recognized a cause of action for monetary damages where a student alleged sexual harassment by a fellow classmate. The court followed

---

1. In *Franklin,* the school district argued that the Court could not grant relief in the form of monetary damages for an intentional violation of Title IX because the statute was enacted pursuant to Congress' Spending Clause power. This argument was based on the holding in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 28–29, 101 S.Ct. 1531, 1545–46, 67 L.Ed.2d 694 (1981), where the Court held that remedies under Spending Clause statutes are limited where the alleged violation is unintentional. The

*Franklin* Court rejected this assertion, however, reasoning that "the point of not permitting monetary damages for an unintentional violation is that the receiving entity of federal funds lacks notice that it will be held liable for a monetary award." *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037 (citing *Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1539–40). This notice problem does not exist in a case where intentional discrimination is alleged. *Id.*

the Supreme Court's analysis in *Franklin* and analogized sexual harassment in school to that in the workplace. The court opined that a student should be afforded the same protection from sexual harassment in school that an employee is given in the workplace, stating:

> The damage caused by sexual harassment ... is arguably greater in the classroom than in the workplace, because the harassment has a greater and longer lasting impact on its young victims, and institutionalizes sexual harassment as accepted behavior. Moreover, as economically difficult as it may be for adults to leave the workplace, it is virtually impossible for children to leave their assigned school.

*Davis,* 74 F.3d at 1193. Thus, applying Title VII principles to the plaintiff's Title IX claim, the court recognized that Title IX encompasses a claim for damages where a fellow student creates a hostile educational environment and the supervising authorities knowingly fail to act to eliminate the harassment. *Id.* In so holding, the court rejected the school board's argument that Title IX applies only to actions taken by the federally funded educational institution or its employees. It concluded, instead, that when a federally funded educational institution knowingly fails to take steps to remedy a hostile environment created by one student's sexual harassment of another, the harassed student has been "denied the benefits of, or been subjected to discrimination under the educational program" in violation of Title IX. *Id.* at 1194.

The court then ruled that to state a cause of action for damages for peer sexual harassment under Title IX a plaintiff must prove: (1) that she is a member of a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) that some basis for institutional liability has been established.

*Id.* (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66–73, 106 S.Ct. 2399, 2405–09, 91 L.Ed.2d 49 (1986)). Elaborating on the requirement for some basis of institutional liability, the court noted that Title VII allows for employer liability for harassing conduct of an employee's co-worker where the plaintiff shows that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." *Davis,* 74 F.3d at 1195. Thus, the court held that Title IX imposes liability on a school board for a hostile educational environment created by a student's peers when the school board knows or should know of the harassment and fails to take prompt action to remedy the situation. *Id.* The dissent criticized the court's decision to recognize liability for a school board's *negligent* failure to intervene. Under the Supreme Court's decision in *Franklin,* the dissent reasoned, liability for peer harassment under Title IX should be limited to *intentional* conduct on the part of the school board. *Id.* at 1196.

Shortly after the Eleventh Circuit Court of Appeals decided *Davis v. Monroe County Board of Education,* the Fifth Circuit Court of Appeals issued its opinion in *Rowinsky v. Bryan Independent School District,* 80 F.3d 1006 (5th Cir.1996). The court disagreed with the *Davis* court's interpretation of Title IX. Relying on the plain language of the statute, its legislative history, and the Department of Education's Office of Civil Rights' interpretation of Title IX, the court in *Rowinsky* concluded that, because Title IX was enacted pursuant to Congress' Spending Clause power, it prohibits only acts by grant recipients themselves or their employees. *Rowinsky,* 80 F.3d at 1012. The rationale for the court's conclusion was, in part, its opinion that:

> [T]he value of a spending condition is that it will induce the grant recipient to comply with the requirement in order to get the needed funds. In order for the coercion to be effective, the likelihood of violating the prohibition cannot be too great.

*Id.* at 1013. Thus, imposing liability upon a grant recipient for the acts of third parties would be incompatible with the purpose of a spending condition. *Id.* Because the grant recipients have minimal control over the acts

of third parties, the possibility of unwitting violations of Title IX would compel the Title IX recipient to refuse the grant of federal funds. *Id.*

Thus, in *Rowinsky,* the court concluded that to state a claim against a school district under Title IX, a plaintiff "must demonstrate that the school district responded to sexual harassment claims differently based on sex." *Id.* at 1016. For example, a school district might violate Title IX if it "treat[s] sexual harassment of boys more seriously than sexual harassment of girls, or even if it turn[s] a blind eye toward sexual harassment of girls while addressing assaults that harmed boys." *Id.* Implicit in the court's analysis is the requirement that a plaintiff seeking to establish an actionable Title IX claim for monetary damages must show that a school district or its employees *intentionally* treated the sexual harassment claims of one sex differently than it treated the same claims made by the opposite sex. Heather Wright was unable to make such a showing in the matter before this court.

The Tenth Circuit Court of Appeals most recently considered the issue of peer-to-peer sexual harassment in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996). The plaintiff in *Seamons* sought to hold the school district liable under Title IX alleging that the school district's reaction to a specific incident amounted to toleration of a hostile educational environment in violation of the statute. The district court dismissed the plaintiff's claim. On appeal, the court in *Seamons* held that a plaintiff must prove:

> (1) [T]hat he is a member of a protected group; (2) that he was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; 4) that the sexual harassment was sufficiently severe or pervasive so as to unreasonably alter the conditions of his education and create an abusive educational environment; and (5) that some basis for institutional liability has been established.

*Seamons,* 84 F.3d at 1232 (citing *Davis,* 74 F.3d at 1194).

The court did not rule on issue of the proper basis for institutional liability under Title IX, however, because it concluded that plaintiff's claim failed to satisfy the third element of the test. *Id.* The plaintiff failed to allege that the school officials' would have responded differently to the incident in question if the same claim were made by a female student. *Id.* Thus, the court held that the plaintiff's failure to allege sufficient facts to show that the school officials' reaction was based on his sex precluded him from stating an actionable claim under Title IX.

As the preceding analysis indicates, the appellate court decisions do not present a uniform rule with regard to whether a student must prove an *intent* to discriminate on the part of the educational institution to state a valid claim for monetary damages for peer-to-peer sexual harassment. Further, the courts do not agree upon what it is that a plaintiff must establish the school district intended to do. In *Franklin,* the Supreme Court indicated that the respondeat superior theory of supervisor liability applies in the Title IX context. Thus, where the harasser is an agent of the school, a plaintiff must prove that the school district, or someone for whose actions the school district is responsible, intended to sexually harass the plaintiff. The courts in *Rowinsky* and *Seamons,* on the other hand, require a showing that the school district intended to treat one sex differently than it treated the opposite sex. The court in *Davis* held that a plaintiff need not show any intent. That court will hold a school district liable for peer sexual harassment if school officials know about the harassing behavior and fail to take action to stop it.

The dissension stems from the courts' differing views as to the scope of the duty Title IX places on educational institutions not to discriminate on the basis of sex. The Fifth Circuit Court of Appeals reasoned that because Title IX was enacted under Congress' spending power, its prohibitions are targeted only at grant recipients. *See Rowinsky,* 80 F.3d at 1015 (examining Title IX legislative history and concluding Title IX "[is] not a panacea for all types of discrimination, but rather a limited initial attempt to end discrimination by educational institutions"). Educational institutions must therefore have notice of their potential liability under Title IX for the statute to effectively deter dis-

crimination. If the institution *intends* to discriminate, it will have notice of its transgression and subsequent liability.

The *Davis* and *Seamons* courts, in contrast, do not focus on the fact that Congress enacted Title IX through exercise of its spending power. Rather, these courts focus on the fact that Title IX was enacted to prohibit discrimination based on sex in the educational environment. *See Davis*, 74 F.3d at 1194 (noting that when an educational institution knowingly fails to take action to remedy a hostile environment caused by a student's sexual harassment of another, it denies that student the benefits of that educational program in violation of Title IX); *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir.1996) (adopting the *Davis* court's test for an actionable a peer-to-peer sexual harassment claim but employing a rigorous standard to determine whether the harassment was "based on sex"). The *Davis* and *Seamons* courts find support for their interpretation in the Supreme Court's *Franklin* decision, where the Court indicated that the Title VII "hostile environment" theory of sex discrimination is also available to Title IX plaintiffs.

The district courts confronting the issue have held that a showing of intent to discriminate is necessary to state an actionable claim for monetary damages under Title IX. Where direct evidence of intent to discriminate is lacking, however, the lower courts have recognized that intent to discriminate can be inferred through a school district's active encouragement of peer harassment, actual knowledge of and failure to take steps to remedy such harassment, or tolerance of harassing behavior. *See Bruneau v. South Kortright Central Sch.*, 935 F.Supp. 162 (N.D.N.Y.1996); *Burrow v. Postville Community Sch. Dist.*, 929 F.Supp. 1193 (N.D.Iowa 1996); *Bosley v. Kearney R–1 Sch. Dist.*, 904 F.Supp. 1006 (W.D.Mo.1995); *Oona R.–S v. Santa Rosa City Sch.*, 890 F.Supp. 1452 (N.D.Cal.1995); *Doe v. Petaluma City Sch. Dist.*, 830 F.Supp. 1560 (N.D.Cal.1993), *reversed on other grounds*, 54 F.3d 1447 (9th Cir.1995).

In *Burrow v. Postville Community School District*, 929 F.Supp. 1193 (N.D.Iowa 1996),

Chief Judge Michael J. Melloy considered a school district's motion for summary judgment based on the plaintiff's failure to establish an intent to discriminate in her Title IX claim for peer sexual harassment. The court performed an exhaustive analysis of case law governing the issue of peer-to-peer sexual harassment and concluded that Title VII precedent is appropriate for analyzing hostile environment sexual harassment claims under Title IX. Mindful of the Supreme Court's holding that a claim for monetary damages under Title IX requires a showing of intent to discriminate, the court adopted a slightly modified version of the *Davis* court's specification of the necessary elements for a claim of peer sexual harassment. Under this standard, a plaintiff must prove:

> (1) [T]hat the plaintiff is a member of a protected group; (2) that the plaintiff was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's education and create an abusive educational environment; and (5) that the educational institution knew of the harassment and *intentionally* failed to take proper remedial measures because of the plaintiff's sex.

*Burrow*, 929 F.Supp. at 1205–06 (emphasis added) (citing *Davis*, 74 F.3d at 1194; *Meritor*, 477 U.S. at 66–73, 106 S.Ct. at 2405–09, and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20–23, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)).

In light of the preceding analysis, this court agrees with the majority view that Title IX encompasses a claim for peer-to-peer sexual harassment. However, the court does not believe that a school district can be held liable under Title IX for its *negligent* failure to remedy the sexually harassing behavior by a student's peers despite its knowledge of such behavior. The Supreme Court's opinion in *Franklin* explicitly demands more than mere negligence to create liability for monetary damages for a violation of Title IX—it requires plaintiffs to show an *intent* to discriminate.

For this reason, the court finds that the test set forth in *Burrow* is the appropriate

test for an actionable claim of peer sexual harassment under Title IX. A plaintiff must prove (1) that the plaintiff is a member of a protected group; (2) that the plaintiff was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive that it altered the conditions of the plaintiff's education and created an abusive educational environment; and (5) that the educational institution knew of the harassment and *intentionally* failed to take the proper remedial measures because of the plaintiff's sex. This test ensures that the educational institution will have notice of its potential liability, *see Franklin,* 503 U.S. at 75 n. 8, 112 S.Ct. at 1038 n. 8 ("[W]e conclude that a money damages remedy is available under Title IX for an intentional violation irrespective of Congress power to enact the statute...."), and gives effect to the Supreme Court's directive that courts give Title IX "the scope that its origins dictate ... by accord[ing] it a sweep as broad as its language." *See North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982).

■ At trial, the plaintiff persuaded the court to instruct the jury on a theory of liability patterned after the elements set forth in *Davis v. Monroe County Board of Education, supra.* The court was convinced that the *Davis* standard was the only standard upon which the plaintiff could possibly prevail. The school district was thoroughly criticized by plaintiff's expert, Dr. Shoop, for failing to have a sexual harassment policy in place. However, this failure was only negligence at best. Further, the school district took steps to punish known incidents of harassment and promptly[2] removed graffiti that had been posted about the plaintiff. The school district, through its lack of training and experience with student sexual harassment claims, was not well equipped to handle this terrible situation. The court saw no evidence, however, that went past negligence into reckless or intentional discrimination.

Upon notification that the plaintiff and her rapist would both be in high school, school officials made sure that contact between the two would not take place at school. Her ex-boyfriend was sent to the alternative high school and plaintiff went to the regular high school. The only time at which her ex-boyfriend would be in the school would be to eat lunch. Later, arrangements were made such that her ex-boyfriend would not even eat lunch at the main high school. When the harassment had proceeded to the point where plaintiff indicated that she simply could not exist in that environment, the school officials attempted to make special arrangements for her instruction in or out of school, at her choice. Students caught in any act of harassment were reprimanded but school officials found no way to deal with the problem on a preventative global basis. Plaintiff's expert, while critical of the way in which school officials handled the problem, had no immediate solution for the problem either.

This order should not be construed as any criticism of the plaintiff for having filed this case. It focused attention on a terrible problem that will be repeated unless effort is made to study and prevent it in the future. This court simply does not believe that plaintiff could meet her burden to prove intentional discrimination.

Upon the foregoing,

IT IS ORDERED

1. The defendant's motion for judgment as a matter of law (docket number 65) is granted. The judgment entered herein on June 11, 1996 is set aside and the Clerk shall enter judgment for defendants on all claims.

2. The plaintiff's protective applications for attorneys' fees and disbursements and for front pay and prejudgment interest (docket numbers 67 and 68) are denied as moot.

3. The plaintiff's motion for leave to withdraw as counsel for the plaintiff (docket number 71) is granted.

---

2. The parties will disagree about what is prompt. It is clear that the school was genuinely concerned about the graffiti and moved expeditiously to remove it.