Kellie COLLIER, a minor, by her Parent
and Natural Guardian Dennis
COLLIER

v.

WILLIAM PENN SCHOOL
DISTRICT, et al.

Civil Action No. 96–7765.

United States District Court,
E.D. Pennsylvania.

Feb. 28, 1997.

B. Joyce Thompson Dale, Media, PA, for Plaintiff.

Andrew A. Borek, Harris and Silverman, Philadelphia, PA, Deborah J. Nathan, Michael I. Levin and Associates, P.C., Huntingdon Valley, PA, for Defendants.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff Kellie Collier, a student in the William Penn School District ("WPSD"),

brings this suit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, as well as under 42 U.S.C. § 1983 and state law. She claims that fellow students sexually harassed her and that the defendants, WPSD and certain WPSD employees, failed to take remedial action. Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, they move for a more definite statement pursuant to Fed.R.Civ.P. 12(e).

A complaint should be dismissed pursuant to Rule 12(b)(6) only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). All well pleaded factual allegations in the complaint are assumed to be true and viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969).

For the purposes of the present motion, we must accept as true the facts alleged in the complaint. Plaintiff currently is a special education student at Penn Wood High School in the WPSD. From the seventh through ninth grades, while at Penn Wood Junior High School in the WPSD, she endured repeated sexual harassment from male students in her class. The harassment included offensive language, sexual innuendo, sexual propositions, and threats of physical harm. From the outset, plaintiff and her father repeatedly complained to teachers, supervisors, and administrators of WPSD about the situation. They also requested that WPSD remove plaintiff from those classes where the offending students were enrolled. WPSD undertook no corrective action.

The harassment escalated until, on May 21, 1996, a male student who had sexually harassed plaintiff in the past, and about whom the Colliers had complained, exposed his penis to plaintiff and grabbed her breast. Plaintiff and her father reported this incident to WPSD administrators and employees. Once again, defendants made no effort to

alleviate the harm. Plaintiff alleges that the harassment has carried over to Penn Wood High School. Despite the Collier's persistent complaints, neither WPSD nor any of its employees has remedied the problem.

### I. Title IX

Plaintiff first asserts that the defendants have violated her educational rights under 20 U.S.C. § 1681 *et seq.*, commonly known as "Title IX." Title IX provides, in pertinent part, that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.... [1]

20 U.S.C. § 1681(a). It is well-established that Title IX is enforceable through an implied private right of action. *Cannon v. University of Chicago*, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560 (1979). This right of action includes a claim against a school district for money damages where a teacher sexually harasses a student. *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 1037–38, 117 L.Ed.2d 208 (1992). What remains unsettled, however, is the issue at the heart of this litigation: does Title IX also warrant money damages when the alleged harassment is inflicted by fellow students?

Plaintiff contends that the defendants should be liable for the sexually hostile environment created by the harassment of her peers at Penn Wood Junior and Senior High Schools. Specifically, she argues that the defendants' failure to stop or at least curtail the harassment has "on the basis of sex ... denied [her] the benefits of ... [and] subjected [her] to discrimination under" an education program receiving federal financial assistance. 20 U.S.C. § 1681(a). Additionally, plaintiff avers that her Title IX claim should be governed by those legal standards which apply to Title VII cases where employers countenance a sexually hostile work environment created by employees. 42 U.S.C. § 2000e–2(a); *Andrews v. City of Philadel-*

---

1. WPSD does not dispute that it receives federal    assistance.

*phia,* 895 F.2d 1469, 1482 (3d Cir.1990). Defendants argue that Title IX does not authorize a damage claim for a sexually hostile environment created by students and that, even if it does, Title VII analysis does not apply. As far as we can determine, this is a matter of first impression in this judicial Circuit.

Only one Court of Appeals has definitively answered the question presented by this case.[2] In *Rowinsky v. Bryan Independent Sch. Dist.,* 80 F.3d 1006 (5th Cir.1996), the Fifth Circuit concluded that damages are not available under Title IX for a sexually hostile environment created by students. In that case, two female students were physically and verbally abused by male students on the school bus they rode to school each day. The female students complained to the bus driver on several occasions. These students and their parents also voiced concern to the assistant principal, the assistant director of the school transportation office, the director of secondary education, and the Superintendent of the School District. However, none of the persons contacted took any action other than to suspend one of the male students for three days. The female students sued the School District and several of its employees under Title IX, alleging that they condoned and caused hostile environment sexual harassment. *Id.* at 1009–10. The district court entered summary judgment in favor of the defendants.

The Fifth Circuit affirmed. It held that Title IX's prohibition of discrimination only attaches to the actions of a federal fund recipient, such as the school district, not those of any third parties. Since the school district itself had not harassed the students, it could not be liable. *Id.* at 1013. The school district could be liable, if at all, only when "[it] responded to sexual harassment claims differently based on sex. Thus, a school district might violate title IX if it treated sexual harassment of boys more seri-

ously than sexual harassment of girls...." *Id.* at 1016.

We disagree with *Rowinsky.* The Fifth Circuit failed to consider the role the omissions of the school district may have played. In our view, the inquiry should focus on whether the school district, as a recipient of federal funds, failed, after notice, to prevent or curtail the sexual harassment of students within its charge. *Accord Doe v. Petaluma City Sch. Dist.,* 949 F.Supp. 1415 (N.D.Cal. 1996). The text of Title IX should be given "a sweep as broad as its language." *North Haven Bd. Of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982) (citation omitted). Title IX broadly declares that no student shall be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under" any federally-funded educational program. 20 U.S.C. § 1681(a). Plaintiff alleges that WPSD was aware that its students were harassing her but tolerated the sexually hostile environment, which environment inhibited plaintiff's ability to learn. If so, the school district was "den[ying] [plaintiff] the benefits of" her educational program and/or "subjecting [her] to discrimination" under that program in violation of Title IX. 20 U.S.C. § 1681(a).

A review of the case law, *Rowinsky* excepted, supports our position. Our starting point is *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). As noted previously, the Supreme Court determined in *Franklin* that Title IX liability appertains when a teacher sexually harasses a student, the school district has actual knowledge of the teacher's conduct, but the school district fails to stop or control the harassment. *Id.* at 75, 112 S.Ct. at 1037–38. In doing so, the Court drew an analogy to Title VII, the federal statute which prohibits discrimination in employment. 42 U.S.C. § 2000e–2(a). The

**2.** Plaintiff cites two other Circuit Court decisions in support of her claim. However, the decision of the Eleventh Circuit in *Davis v. Monroe County Bd. of Educ.,* 74 F.3d 1186 (11th Cir.1996), which supported Title IX liability under these circumstances, has been vacated en banc. 91 F.3d 1418 (11th Cir.1996). Moreover, contrary to plaintiff's assertion, the Tenth Circuit did not recognize a cause of action under Title IX for peer sexual harassment in *Seamons v. Snow,* 84 F.3d 1226 (10th Cir.1996). While the *Seamons* court acknowledged the *Davis* holding, it explicitly "decline[d] to address" the issue, concluding that "it is unclear what liability, if any, the school district might have for the acts of its students." *Id.* at 1232 n. 7.

Court reasoned that just as Title VII imposes liability against an employer "'when a supervisor sexually harasses a subordinate because of the subordinate's sex,'" a cause of action under Title IX may lie against a school district when a teacher sexually harasses a student. *Id.* at 75, 112 S.Ct. at 1037, *quoting Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Since *Franklin,* Title VII principles have repeatedly been applied to Title IX cases, at least where "Title IX prohibits the same conduct prohibited by Title VII." *Bruneau v. South Kortright Central Sch. Dist.,* 935 F.Supp. 162, 171 (N.D.N.Y.1996). Validation for this approach comes not only from *Franklin* but from the legislative history and agency interpretations which accompany Title IX.

Among its other purposes, Title IX was enacted to fill a gap in discrimination law left by Title VII. Title VII provides in relevant part that:

> it shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions or privileges of employment, because of such individual's ... sex ... or (2) to limit, segregate, or classify [its] employees, or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's ... sex.

42 U.S.C. § 2000e–2(a). However, when enacted, Title VII specifically excluded educational institutions from its terms. *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988); 1972 U.S.C.C.A.N. 2462, 2512. That allowed inequities to persist in education which had been outlawed in employment. A dominant purpose of Title IX was to "remove that exemption and bring those in education [into compliance]." *Id.* The Department of Education's Office of Civil Rights ("OCR"), the body charged with administering Title IX, has confirmed this purpose. The OCR applies Title VII principles to Title IX cases, even in cases of peer-peer sexual harassment in public schools. *Doe v. Claiborne County,* 103 F.3d 495, 514 (6th Cir.1996). While not binding on this court, the interpretations of a statute by the agency administering it warrant "appreciable deference." *Williams v. School Dist. of Bethlehem,* 998 F.2d 168, 171 (3d Cir.1993).

■ In light of these factors, we believe that Title VII is "the most appropriate analogue when defining Title IX's substantive standards." *Mabry v. State Bd. of Community Colleges and Occupational Educ.,* 813 F.2d 311, 316 n. 6 (10th Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). Title VII imposes liability on employers for their failure to prevent or eradicate a sexually hostile environment created by employees as that environment discriminates and limits employment opportunities based on sex. *See, e.g, Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Similarly, Title IX should impose liability on a school district for its failure to prevent or eradicate a sexually hostile environment created by students, as that environment discriminates and limits *educational* opportunities based on sex. Indeed, while a disgruntled employee may leave a hostile workplace, "it is virtually impossible for children to leave their assigned school." *Bruneau,* 935 F.Supp. at 172 (citation omitted).

Numerous courts have concurred with this reasoning and concluded that school districts may be liable for failing to respond to a hostile environment created by "peer-peer" sexual harassment. *Id.; Doe v. Petaluma City Sch. Dist.,* 949 F.Supp. 1415, 1420 (N.D.Cal.1996); *Burrow By and Through Burrow v. Postville Community Sch. Dist.,* 929 F.Supp. 1193, 1205 (N.D.Iowa 1996); *Wright v. Mason City Community Sch. Dist.,* 940 F.Supp. 1412, 1419–20 (N.D.Iowa 1996); *Bosley v. Kearney R–1 Sch. Dist.,* 904 F.Supp. 1006, 1023 (W.D.Mo.1995); *Oona R.S. v. Santa Rosa City Schs.,* 890 F.Supp. 1452, 1469 (N.D.Cal.1995). While these courts have employed slightly different tests of liability, several factors are clearly required to state a viable sexual harassment claim in this context. The conduct must be "severe and pervasive," and must create "an

abusive educational environment." *See, e.g., Petaluma,* 949 F.Supp. 1415, 1421; *Wright,* 940 F.Supp. at 1419–20. The school district must have notice of the peer on peer harassment, and must, to some degree, intend to discriminate. *Id.*

■ The plaintiff in the pending case states a cognizable Title IX claim. Her complaint alleges that WPSD did nothing despite actual notice of pervasive and significant sexual harassment by several students, against her, over a prolonged period of time. She further contends that this harassment created an abusive educational environment, and that WPSD actually intended to discriminate against her.

■ While we are permitting plaintiff's complaint to go forward, we caution that not every unwanted interaction of a physical or sexual nature between adolescents states a Title IX claim against a school district. While sexual overtures or contact between a teacher and a student is undeniably out of bounds, a similar relationship between adolescents does not necessarily constitute harassment. Even so, we are confident that wherever the line for school district liability for peer-peer harassment is drawn, the facts of plaintiff's complaint, if true, cross it.

■ In addition to the school district, plaintiff has sued various WPSD employees. The individual defendants argue that no Title IX cause of action may be maintained against them. We agree. Title IX prohibits "[sex] discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). We read this language to bind only WPSD, as individual school district employees are not "education program[s] or activit[ies]" and do not receive federal funds. *Id.; Accord Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988); *Bowers v. Baylor Univ.,* 862 F.Supp. 142, 146 (W.D.Tex.1994); *Seamons v. Snow,* 864 F.Supp. 1111 (D.Utah 1994), *aff'd in part on other grounds,* 84 F.3d 1226 (10th Cir.1996), and *Bougher v. University of Pittsburgh,* 713 F.Supp. 139 (W.D.Pa.), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989). Support for our interpretation of Title IX rests in two Supreme Court decisions.

When the Court implied a private right of action for Title IX violations in *Cannon v. University of Chicago,* 441 U.S. 677, 715, 99 S.Ct. 1946, 1967, 60 L.Ed.2d 560 (1979), it spoke only of a "private right of action against *recipients* of federal funds." (Emphasis added). Moreover, in *Franklin,* the Court spoke of damages against "the receiving entity of federal funds" and, specifically, "Gwinnett County Public Schools." *Franklin,* 503 U.S. at 74–75, 112 S.Ct. at 1037. We do not believe that Title IX provides a claim for damages against the individual employees of WPSD.

## II. § 1983

■ We now turn to plaintiff's second federal cause of action, brought under 42 U.S.C. § 1983. Section 1983 states that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or proper proceeding for redress.

Plaintiff avers that the defendants, by failing to prevent or curtail the students' sexual harassment, have unlawfully deprived her of her right to bodily integrity protected by the due process clause of the Fourteenth Amendment. *Albright v. Oliver,* 510 U.S. 266, 271–72, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994). For the purposes of this opinion, we presume that all of the defendants were state actors acting "under color of state law" who could be liable under § 1983. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982). Nonetheless, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989).

Plaintiff's complaint suggests that defendants remain liable to her under any one of three exceptions to the *DeShaney* rule: (1)

special relationship; (2) policy, practice, or custom; and (3) state-created danger. In her brief in opposition to the defendants' motion to dismiss, however, plaintiff concedes that compulsory student attendance laws do not create a special relationship between a student and a school district such that the latter has an affirmative duty to protect the former. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372–73 (3d Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). She also acknowledges that when acts are performed by school students, rather than teachers or supervisors, " § 1983 liability may not be predicated [on a theory of establishing and maintaining a custom, practice or policy which causes harm to a student] because private actors committed the underlying violative acts." *Id.* at 1376. The only remaining question, then, is whether the defendants are liable under § 1983 on a state-created danger theory.

The state-created danger doctrine has its roots in the *DeShaney* decision. The plaintiff in that case, a child, was beaten by his father. The defendants—Winnebago County, a County social services agency, and certain employees of that agency—were aware of the ongoing abuse. Despite numerous opportunities to take action, they permitted the father to retain custody of the child. Eventually, the father beat the child so badly that the child suffered brain damage. *DeShaney*, 489 U.S. at 193, 109 S.Ct. at 1002. The plaintiff sued under § 1983. He alleged:

> that [defendants] had deprived [him] of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known.

*Id.* The Court held that the defendants did not violate § 1983. In doing so, it relied on the general precept that the due process clause does not place an affirmative duty on the State to protect its citizens against invasion by private actors. *Id.* at 195, 109 S.Ct. at 1002–03. The Court also explained that the State "played no part in the[ ] creation [of the dangers faced by the plaintiff], nor

did it do anything to render him more vulnerable to them." *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006.

■ The explanatory language of *DeShaney* spawned the state-created danger theory. If a state actor affirmatively creates the danger which harms a plaintiff or renders him or her more vulnerable to that danger, it may be liable under § 1983 even though the state actor itself does not directly harm the plaintiff. *See, e.g., Bryson v. City of Edmond*, 905 F.2d 1386, 1392 (10th Cir.1990); *Cornelius v. Town of Highland Lake*, 880 F.2d 348 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).

The Court of Appeals for the Third Circuit has rejected the state-created danger theory in the public school context. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372–73 (3d Cir.1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). In *D.R.*, male students in a graphic arts class at Middle Bucks Area Vocational Technical School allegedly molested the plaintiffs, female students in the class. On numerous occasions, the male students purportedly forced the plaintiffs into either a bathroom or a darkroom adjacent to the classroom and sexually abused them. The abuse included "offensive touching of their breasts and genitalia, sodomization and forced acts of fellatio." *D.R.*, 972 F.2d at 1366. Although a teacher was present while these acts were committed and the plaintiffs subsequently complained to school officials, no corrective action was taken.

The district court dismissed the complaint on a 12(b)(6) motion. The Court of Appeals, sitting in banc, affirmed. It conceded that the *D.R.* case presented the "most excruciating factual context" but refused to apply the state-created danger doctrine to plaintiffs' § 1983 claims. *Id.* at 1365, 1374. The court emphasized that "[l]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to plaintiffs' detriments in terms of exposure to danger." *Id.* at 1374 (emphasis added). By contrast, the "acts" alleged in *D.R.* were

omissions: the failure of the teacher to supervise her class more closely, the failure of all of the defendants to rectify the problem, and so forth. *Id.* The court also rejected the argument that the defendants, if not liable for creating the danger, were responsible for increasing the risk of harm to plaintiffs by their inaction. *Id.* at 1375–76. It concluded that such allegations "show nonfeasance but they do not rise to the level of a constitutional violation." *Id.* at 1376.

■ As in *D.R.*, the allegations here, if accurate, are abhorrent. Even with repetitive admonishment, the defendants "failed to take any corrective action" and "continue to take absolutely no corrective action." Plaintiff's Complaint, at 4. Though such complacency, if true, is troubling, it cannot be said that by doing nothing the defendants somehow created or aggravated the danger to plaintiff. The harassing students generated the harm, and while defendants allegedly did nothing to stop the problem, they did nothing to exacerbate it. Such "nonfeasance" does not violate plaintiff's constitutional right to due process of law. *D.R.*, 972 F.2d at 1376.

The Third Circuit's recent decision in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir.1996) buttresses our conclusion. In that case, Philadelphia police officers stopped an extremely intoxicated woman and her husband on a highway, late at night, in mid-winter. The officers sent the husband home. A few minutes thereafter, they sent the woman home by herself. She was found over one hour later at the bottom of an embankment, having suffered hypothermia and permanent brain damage from the cold. *Id.* at 1202–03. The plaintiff sued the officers and the City of Philadelphia under a § 1983 claim which rested, in part, on the state-created danger theory. The district court entered summary judgment. The Court of Appeals reversed,

adopting a four-pronged test of state-created danger:[3]

(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur.

*Id.* at 1208. In applying this test, the Third Circuit emphasized that the officers' conduct was supremely important. It "rais[ed] a triable issue of fact as to whether the police officers *affirmatively* placed [plaintiff] in a position of danger." *Id.* at 1211 (emphasis added).

The *D.R.* and *Kneipp* decisions require dismissal of plaintiff's § 1983 claim. Even accepting her allegations as true, she has not plead any affirmative action on the part of the defendants which satisfies the state-created danger theory.

### III. State Law Claims

The final two counts of plaintiff's complaint sound in common law tort. Count III articulates both a negligence claim and a general "intentional tort" claim, whereas Count IV alleges intentional infliction of emotional distress. They are within our supplemental jurisdiction under 28 U.S.C. § 1367.[4]

■ These claims are not viable against WPSD. Under Pennsylvania law, local agencies have governmental immunity for willful misconduct. 42 Pa. Cons.Stat. § 8541, § 8542(a)(2). This bars any claims against WPSD for intentional tort or intentional infliction of emotional distress. Local agencies like WPSD are immune from negligence claims as well, with certain statutory exceptions. *Id.* at § 8542(b). No exceptions apply in this case.

---

**3.** This test was first suggested by the Court of Appeals in *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). However, it was not officially adopted until *Kneipp.*

**4.** Title 28 U.S.C. § 1367 provides in relevant part:
in any civil action of which the district courts have original jurisdiction, the district courts

shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The individual defendants, as WPSD employees, are also immune from negligence claims. *Id.* at § 8545. However, they are not exempt from liability for willful misconduct such as "intentional tort" and intentional infliction of emotional distress. *Id.* at § 8550; *Delate v. Kolle,* 667 A.2d 1218, 1221 (Pa.Commw.Ct.1995), *app. denied,* 544 Pa. 677, 678 A.2d 367 (1996); *Lancie v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (1990). Even so, we must dismiss those counts. The theory of "prima facie" intentional tort states that:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his *conduct* is generally culpable and not justifiable under the circumstances....

Restatement (Second) of Torts § 870 (1979) (emphasis added). A recent decision in this district determined that the Pennsylvania Supreme Court would not recognize a cause of action for prima facie tort. *Charles Shaid of Pennsylvania, Inc. v. George Hyman Construction Co.,* 947 F.Supp. 844, 856 (E.D.Pa. 1996). We agree. Even if Pennsylvania did recognize prima facie tort, that principle would not apply in this case. The defendants did not engage in any affirmative *conduct* which injured plaintiff. This same point dooms plaintiff's intentional infliction of emotional distress claim. "The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988, 991 (1987); Restatement (Second) of Torts § 46 (1979). Accordingly, "[t]here is no cognizable claim under Section 46 where the failure to act, i.e., negligence of a party, forms the basis of the claim." *Jackson v. Sun Oil Co.,* 361 Pa.Super. 54, 521 A.2d 469, 471 (1987).

In summary, all of plaintiff's state law claims must be dismissed.

### IV. Punitive Damages

Finally, plaintiff seeks punitive damages against WPSD under Title IX.[5] Punitive damages are not recoverable against municipalities or municipal subdivisions under fed-

eral law. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Public school districts are considered municipal entities. *See, e.g., Jett v. Dallas Independent Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). It follows, then, that any punitive damage claim against WPSD under Title IX must be dismissed.

### ORDER

AND NOW, this 28th day of February, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendants William Penn School District and Dr. Joseph J. Longo, Salvatore Salamone, Paul A. Kowalski, Richard S. Comroe, Wendy Reailer, and Nancy McGovern ("the individual defendants") to dismiss the complaint of plaintiff Kellie Collier by her parent and natural guardian Dennis Collier pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED in part and DENIED in part as follows:

(1) the motion to dismiss Count I of the complaint is GRANTED as to the individual defendants but is DENIED as to defendant William Penn School District;

(2) the motion to dismiss Counts II, III, and IV of the complaint is GRANTED; and

(3) the motion to dismiss the punitive damage claims from the complaint is GRANTED.

It is further ORDERED that the motion of the defendants for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure is DENIED as moot.

---

**5.** Our discussion *supra* negates any punitive damage claims under § 1983, under state law, or against any of the individual defendants.