**April PAGE, a minor, by and through her parents and natural guardians, Raymond and Georgene PAGE, Raymond Page, in his own right, and Georgene Page, in her own right, Plaintiffs,**

v.

**The SCHOOL DISTRICT OF PHILADELPHIA, Marty Warten, Harry Gafney, and R. Waldman, individually and as employees of the School District of Philadelphia, The City of Philadelphia, and Zulka, Police Officer, individually and as an officer of the City of Philadelphia, Defendants.**

No. Civ.A. 95–7674.

United States District Court,
E.D. Pennsylvania.

April 14, 1999.

---

Robert Huber, Philadelphia, PA, for plaintiff.

Harry Tischler, Philadelphia, PA, for defendant.

1. There is confusion in the record over the spelling of this defendant's last name—the name appears as "Warten" on the docket, but as "Wharton" in the record, including in his

*MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Before the Court are the motion to dismiss or in the alternative for summary judgment of defendants School District of Philadelphia ("the school district"), Marshall Wharton [1] ("Wharton"), R. Waldman ("Waldman"), and Harry Gafney ("Gafney") (collectively "the school district defendants") (Document No. 38) and the motion for summary judgment of defendants Officer Zulka and the City of Philadelphia (collectively "the city defendants") (Document No. 39) on the claims of plaintiffs April Page, a minor, by and through her parents and natural guardians, Raymond and Georgene Page, and Raymond and Georgene Page in their own right. Based on the following, the motions will be granted.

## I. BACKGROUND

April Page and her parents filed a complaint in this Court, which was amended on December 12, 1995 alleging claims under 42 U.S.C. § 1981, § 1983, and § 1988 arising from an assault on April Page by a group of students on December 13, 1993 on the third floor of the Harding Middle School, where she was a student. April Page sustained injury from this attack. The defendants contend that April Page was supposed to go to the cafeteria for lunch on the first floor at that time and that she was not supposed to be on the third floor; the plaintiffs allege that she was lawfully on the third floor of the school.

At the time of this incident, Wharton and Waldman were employees of the school district, who worked with security issues at the school. Gafney was the principal of Harding Middle School in the School District of Philadelphia. Officer Zulka was a police officer with the City of

deposition transcript. The Court will use the latter version for purposes of this Memorandum and Order.

Philadelphia who the plaintiffs contend was assigned to the Harding Middle School to assist with security. The claims against the individual defendants are asserted against them individually and in their official capacities as employees of the school district or as an officer of the City of Philadelphia. The plaintiffs do not allege that any of the defendants were present on the third floor of Harding Middle School at the time of the attack on April Page or had any actual notice of the impending attack.

The plaintiffs claim that the problems at Harding Middle School arose because of April and Raymond Page's Native American heritage. The plaintiffs claim that for a period of time prior to the date of the attack on April Page, the defendants knew or should have known of problems that she was having at school, including attacks and threats from students. Raymond and Georgene Page allege they regularly voiced concern to the defendants over the daily taunts and attacks on their daughter by students prior to the incident on December 13, 1993. The plaintiffs also claim that the school district defendants had agreed to allow April Page to arrive late to school to avoid altercations with other students on the way to school.

The plaintiffs point to the deposition testimony of Wharton, in which he testified that April told him on two separate occasions starting within the first month of school in the fall of 1993 that she was being accosted by other students on the way to school. (School District Defs.' Ex. 7 at 32–33). In addition, the plaintiffs claim that the defendants and Raymond Page reached an agreement whereby the defendants would ensure April Page's safety during, coming to, and leaving school. The plaintiffs submit the affidavit of Raymond Page, April Page's father, in which he attests that:

> In early October 1993, I discussed the difficulty that April was having going to and from school with Marshall Wharton, the School District of Philadelphia's Security Officer assigned to the Harding Middle School. Mr. Wharton suggested that I bring April to school a little later than the other school children in order to prevent future confrontations. Mr. Wharton and Adolphus Williams, the Vice–Principal assured me that April Page would be given a security escort while she was inside the school building so that she would be safe while in school. On a separate occasion, I discussed April's safety with Mr. Wharton in the presence of Officer Zulka. At that time, Officer Zulka told me that if Mr. Wharton was not available that she would see that April was taken care of.

> Following my discussion with Mr. Wharton and Mr. Williams, Mr. Wharton repeatedly promised on a nearly daily basis that he would make sure that April was walked to and from class, lunch, and in and out of school.

The final piece of evidence the plaintiffs present to support their claims is the deposition testimony of Gafney, the school principal, in which he testified that:

> The role of the principal is the building administrator, who is in charge for basically anything that occurs on school grounds under his watch or her watch. At a minimal level, it might be discussing students' behavior in the hallway, ushering kids to class who are late.

(School District Defs.' Ex. 8, Gafney dep. at 33–34).

The plaintiffs' arguments in opposition to the motions focus on the alleged agreement entered into by the defendants and Raymond Page. First, the plaintiffs claim that the agreement reached by the defendants and Raymond Page constituted a policy or custom of the defendants which supports their claim under § 1983. Second, the plaintiffs argue that the defendants subjected her to a dangerous situation in violation of her due process rights under the Fourteenth Amendment because the defendants entered into a "special relationship" with them by agreeing to escort

April Page around the school and then failed to ensure her safety against the students who attacked her. The plaintiffs argue that the Court should deny the motions for summary judgment because there is a factual dispute as to the nature and existence of the defendants' duty to the plaintiff that created a special relationship.

## II. STANDARD FOR SUMMARY JUDGMENT[2]

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment must be granted.

The moving party has the initial burden of illustrating for the court the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case;" the movant is not required to produce affidavits or other evidence to establish that there are no genuine issues of material fact. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548.

Once the moving party has made a proper motion for summary judgment, the burden switches to the nonmoving party. Under Rule 56(e),

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The court is to take all of the evidence of the nonmoving party as true and to draw all reasonable inferences in his favor in determining if there is a genuine issue of material fact. *See Adickes,* 398 U.S. at 158–59, 90 S.Ct. 1598. In order to establish that an issue is genuine, the nonmoving party must proffer evidence such that a reasonable jury could return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence. *See id.* at 249–50, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Claims Under Section 1983[3]

#### 1. Official Immunity

■ The individual school district defendants raise the defense of qualified immunity to the plaintiffs' claims under § 1983, as well as argue that they are entitled to summary judgment on the merits of the claims. To determine the liability of the individual defendants under § 1983, the

---

**2.** The school district defendants couch their motion as one to dismiss or in the alternative for summary judgment. Because the plaintiffs and defendants both included matters outside the pleadings to support their positions, the Court will proceed on the motion as one for summary judgment.

**3.** It is not clear whether Raymond and Georgene Page are pursuing claims in their own right against the defendants under all theories of § 1983 liability for violation of their consti-

tutional rights. The school defendants assert in their brief that these two plaintiffs withdrew all of the claims brought in their own right; however, there is no evidence of this in the record before the Court. Even though it is doubtful that all of the plaintiffs' theories of relief under § 1983 pertain to the claims of Georgene and Raymond Page asserted in their own right, for simplicity's sake I will resolve the motions on each theory as if the claim is being asserted by all plaintiffs.

Court must address as a threshold matter whether the individual defendants are entitled to qualified immunity on the plaintiffs' claims under § 1983. *See D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1367–68 (3d Cir. 1992) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Officials with discretionary powers are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

The individual defendants claim that they are entitled to qualified immunity because their conduct did not violate clearly established constitutional rights. Because "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Court will proceed to address the merits of Page's claims under § 1983 as to all the defendants.[4]

### 2. Special Relationship

■ Section 1983 does not create any substantive rights but rather provides a remedy for violations of constitutional rights or rights under federal law. *See Morse v. Lower Merion School District,* 132 F.3d 902, 906–07 (3d Cir.1997). To state a claim under § 1983, the plaintiffs must show that the defendants, acting under color of state law, deprived them of a right under the Constitution. *See id.* at 907 (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

■ The plaintiffs contend that the defendants deprived April Page of her constitutional right to bodily integrity under the Fourteenth Amendment. The general rule is that "the state has no affirmative obligation to protect its citizens from the violent acts of private individuals" under the due process clause of the Fourteenth Amendment; however, courts have recognized two exceptions to this rule: the "special relationship" exception, and the "state-created danger" theory of liability. *Id.* at 907.

■ The origin of the special relationship theory of liability is the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Under the special relationship theory of liability, a state has a duty to protect citizens against the private actions of third parties when it enters into a special relationship with a particular citizen by engaging in an "affirmative act of restraining the individual's freedom to act on his own behalf." *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1369–70 (3d Cir.1992) (citing *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998). Under the law in the Third Circuit, "the relevant consideration is whether the plaintiffs have been deprived of any avenue of assistance they would have had absent any state involvement." *Black by Black v. Indiana Area School District,* 985 F.2d 707, 714 (3d Cir.1993)

In commenting on the exceptions to the general rule that a state does not have a constitutional duty to protect individuals against harm from third parties, which include providing medical care to inmates and ensuring the reasonable safety of involuntarily committed mental patients, the Supreme Court in *DeShaney* observed that "it is the State's affirmative act of

---

**4.** Although the plaintiffs make allegations against Waldman in their amended complaint, they do not explain or present evidence of her involvement in connection with the assault on April Page, and they make no arguments to support their claims against Waldman in their response to the motion for summary judgment. Accordingly, summary judgment will be granted in Waldman's favor on all of the plaintiffs' claims.

restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998.

The Court of Appeals for the Third Circuit has interpreted the *DeShaney* special relationship exception to require a test of physical custody. *See D.R.*, 972 F.2d at 1370 (citing cases). In *D.R.*, the plaintiffs, two minor female students and their parents, brought claims under § 1983 against their high school alleging that while attending art class, they were verbally and sexually molested over a period of five months by several male students in the unisex bathroom and darkroom that were connected to the classroom. *Id.* at 1365–66. The *D.R.* court noted that other courts had found a special relationship between prisoners and involuntarily committed mental patients and the state because such persons "are wholly dependant upon the state for food, shelter, clothing and safety. It is not within their power to provide for themselves, nor are they given the opportunity to seek outside help to meet their basic needs. Obviously they are not free to leave." *Id.* at 1371. In affirming the district court's dismissal of the plaintiffs' § 1983 claims against the school, the *D.R.* court held that the state does not have a constitutional duty to protect school children from harm from third parties because the school children are not in the type of physical custody required to raise a special relationship, the school children's liberty is not restricted in any way after school hours, and they do not rely on the school to provide for their basic human needs. *Id.* at 1372.

The thrust of the plaintiffs' arguments here is that the agreement reached by the defendants and Raymond Page created a special relationship between the defendants and the plaintiffs so as to impose a constitutional duty on the defendants to ensure April Page's safety from third parties. The school district defendants and the city defendants argue that they made no agreement with the Pages to ensure April Page's safety, and even if such an agreement existed, no "special relationship" was created between them and Page so as to impose liability upon them under § 1983.

This Court concludes that the alleged agreement between Raymond Page and the defendants to ensure the safety of April Page did not alter the relationship between the defendants and April Page in such a way to distinguish this case from the holding in *D.R.* The alleged attack on April Page was by fellow students, not by agents of the school district or the City of Philadelphia. Under the rationale of *DeShaney* and *D.R.*, April Page did not stand in a special relationship to the defendants because April Page was not in the physical custody of Officer Zulka, the City of Philadelphia, or the school district defendants. The agreement reached between the defendants and Raymond Page did not limit April Page's or her parents' freedom to act on her behalf, and thus such an agreement did not establish a special relationship so as to raise constitutional implications. *See Graham v. Independent School District No. I–89*, 22 F.3d 991, 994–95 (10th Cir. 1994) (holding that schools have no duty under the due process clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented). The defendants are entitled to judgment as a matter of law on the plaintiffs' § 1983 claims under a special relationship theory of liability.

### 3. State-created Danger Theory

Although the plaintiffs do not argue in the brief in opposition to the motion that their § 1983 claims fall within the second exception to the general rule that the state does not have a constitutional duty to pro-

tect individuals from harm from third parties, the "state-created danger" theory, the defendants argue that they are entitled to summary judgment on the plaintiffs' § 1983 claims to the extent they are proceeding on such a theory of liability.

■■■ In *Kneipp v. Tedder*, the Court of Appeals for the Third Circuit adopted the state-created danger theory as a "viable mechanism for establishing a constitutional claim" under § 1983. 95 F.3d 1199, 1211 (3d Cir.1996). The *Kneipp* court applied a four-part test, originally articulated in *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152 (3d Cir.1995), which imposes liability on a state actor if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship [5] between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

*Kneipp*, 95 F.3d at 1208. The *Kneipp* court also noted that a "deliberate indifference" standard had generally been employed by courts applying a state-created danger theory of liability. *Id.* at 1208. Under the state-created danger theory of liability, "[i]f a state actor affirmatively creates the danger which harms a plaintiff or renders him or her more vulnerable to that danger, it may be liable under § 1983 even though the state actor itself does not directly harm the plaintiff." *Collier by Collier v. William Penn School District*, 956 F.Supp. 1209, 1215 (E.D.Pa.1997).

■■■ The plaintiffs have presented no evidence to show that the defendants affirmatively created the danger which led to April Page's injury or rendered her more vulnerable to that danger. The only affirmative act of the defendants alleged by the plaintiffs is their entering into an agree-ment with the Pages to ensure April's safety; such an act certainly could not be said to be an affirmative act which created a dangerous situation for April or that rendered her more vulnerable to injury. The plaintiffs have produced no evidence that the harm incurred by April Page was a foreseeable and direct result of the defendants' agreement to ensure her safety while at school, which is the first prong of the *Kneipp* test.

Nor did the plaintiffs produce any evidence to establish that the defendants acted in willful disregard for the safety of April Page, either by entering into the alleged agreement or by failing to prevent the attack on April Page by the group of students. While it could be argued that by agreeing to protect April Page while at school, the defendants caused the Pages to rely on such a promise in lieu of providing alternative protection for April to her detriment, the Pages presented no evidence or argument that they withheld protection for April in reliance on the alleged agreement that they would have otherwise provided and that would have prevented the attack by the students on December 13, 1993.

The fourth element of the *Kneipp* test is whether the defendants used their authority to create an opportunity which otherwise would not have existed for the specific harm to occur. In *Morse v. Lower Merion School District*, the Court of Appeals for the Third Circuit explained that this element concerns "whether the state has in some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission." 132 F.3d 902, 915 (3d Cir. 1997). The plaintiffs presented no evidence that the defendants in any way used their authority to create the opportunity for the attack on April Page to occur or that they somehow "placed" April Page in

---

**5.** The requirement of a "relationship" in this factor is distinct from the "special relation-ship" required under the first exception discussed in section III.A.2, infra.

a position that would have otherwise not existed.

Although this Court is sympathetic to the plight of the Pages while April Page attended Harding Middle School and acknowledges that this is "a classic case of constitutional line drawing in a most excruciating factual context," *D.R.*, 972 F.2d at 1365, the constitutional line has been clearly drawn by the Supreme Court and the Court of Appeals for the Third Circuit to exclude claims such as the one asserted by the Pages. The *D.R.* court noted that while the passivity and nonfeasance of the school defendants was indefensible, they did not rise to the level of a constitutional violation and " '[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.' " *Id.* at 1376 (quoting *DeShaney*, 489 U.S. at 203, 109 S.Ct. 998). While arguably less egregious, the action and lack of action by the defendants in this case do not rise to the level of a constitutional violation under the special relationship or state-created danger theory of liability under § 1983.

### 4. Presence of Policy, Practice, or Custom Leading to Injury

The plaintiffs assert a third basis for their claims under § 1983 by arguing that the defendants violated their constitutional rights by establishing a custom, practice, or policy which lead to April Page's injury. The school district defendants argue that to hold an official liable under § 1983 for an alleged policy or custom it must be established that the defendants had final policy making authority. Further, the city defendants argue that the plaintiffs have no evidence of a policy or custom of the City of Philadelphia or that such as policy was the "moving force" behind April Page's injuries.

Section 1983 imposes liability on a municipality "when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation," either through the policy or custom itself or if the policy or custom is the " 'moving force' behind the constitutional tort of one of its employees." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). "A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and injuries suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984). Liability will not be imposed under § 1983 on a respondeat superior or vicarious liability theory. *See Colburn*, 946 F.2d at 1027.

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990) (citations omitted)).

The Court of Appeals for the Third Circuit in *Stoneking* held that *DeShaney* did not prevent liability for state officials "arising from their policies maintained in deliberate indifference to action taken by their subordinates." *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir.1989). Under the reasoning of *Stoneking*, "a plaintiff must do more than show the defendant could have averted her injury and failed to do so. In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [harm] and that the defendant acted with deliberate indifference to that [harm]. In order to establish deliberate indifference on the part of the defendant, 'something more culpable [must be shown] than a negligent failure to rec-

ognize [a] high risk of harm' to plaintiffs." *Black by Black v. Indiana Area School District,* 985 F.2d 707, 712–13 (3d Cir. 1993) (quoting *Colburn,* 946 F.2d at 1025).

██ To sustain a claim under the reasoning of *Stoneking,* a plaintiff must show a violation by state actors. *See Stoneking,* 882 F.2d at 724 ("The principal distinction between DeShaney's situation and that of Stoneking is that DeShaney's injuries resulted at the hands of a private actor, whereas Stoneking's resulted from the actions of a state employee.") Liability under § 1983 "may not be predicated upon a *Stoneking II* type theory because private actors committed the underlying violative acts." *D.R,* 972 F.2d at 1376.

██ It is clear that the defendants are entitled to judgment as a matter of law on the plaintiffs' § 1983 claim under a policy, practice, or custom theory of liability. Private actors, not state actors, caused the injury upon which the plaintiffs' claims are predicated; this fact removes this case from the realm of a *Stoneking* cause of action under § 1983. In addition, because the plaintiffs presented no evidence to establish that the agreement allegedly entered into by the Pages, Wharton, Gafney, and Zulka was an official policy or custom adopted by a final decision maker of the City of Philadelphia or the school district, or that the alleged agreement was the moving force behind a constitutional tort by an employee of the school district or the City of Philadelphia, the plaintiffs have not satisfied their burden under Rule 56 to show that the alleged agreement was a policy, practice, or custom of the school district or the City of Philadelphia within the meaning of § 1983.

### 5. Failure to Train

As a separate theory of liability under § 1983, the plaintiffs allege that the school district and the City of Philadelphia failed to train their officers and agents sufficiently which resulted in a violation of their constitutional right to due process. The defendants claim that the plaintiffs have submitted no evidence to support her allegation that the school district and the City of Philadelphia were deliberately indifferent to the plaintiffs' constitutional rights in their failure to train their officers and agents.

██ To succeed on a failure to train claim, a plaintiff must establish that the failure amounts to "deliberate indifference" to the constitutional rights of person with whom the municipal agents come in contact. *See Colburn v. Upper Darby Township,* 946 F.2d 1017, 1028 (3d Cir. 1991) (citing *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). A claim for inadequate training will succeed if a plaintiff "can establish that the identified deficiency in the [defendant's] training program is closely related to the injury" suffered by the plaintiff. *Whichard v. Cheltenham Township,* No. 95–3969, 1996 WL 502281, * 5 (E.D.Pa. 1996).

██ In response to the motion for summary judgment, the plaintiffs presented no evidence to support their failure to train claims, such as evidence of the deficiencies in the school district's or the City of Philadelphia's training programs. Indeed, the plaintiffs do not even argue in support of their failure to train claims in response to the motions for summary judgment. This does not satisfy the plaintiffs' burden under Federal Rule of Civil Procedure 56.

The plaintiffs' failure to train claims suffers from another fatal defect. The plaintiffs claim that the school district and the City of Philadelphia are liable under § 1983 for failure to train their officers and agents sufficiently and that such failure to train caused the underlying constitutional violation, i.e. their failure to protect Page's safety from third parties while at school. In order to sustain a claim for failure to train, however, the plaintiffs must be able to support an underlying constitutional violation. Because this

Court has concluded that the defendants did not have a constitutional duty to protect Page from harm from third parties under either a special relationship theory, a state-created danger theory, or a policy, practice, or custom theory, the plaintiffs do not have a claim for failure to train as a matter of law. *See Kneipp v. Tedder*, 95 F.3d 1199, 1212 n. 26 (3d Cir.1996) (observing that the Supreme Court in *City of Canton* assumed that a constitutional violation had occurred under § 1983 and noting that "[o]f course, had there not been an underlying constitutional violation in the first instance, plaintiff's 'failure to train' claim against the City would not stand.")

■ Because Page has failed to sustain a constitutional claim under any theory of liability under § 1983,[6] the individual defendants are entitled to summary judgment on the § 1983 claims against them in their individual capacities based on qualified immunity. Summary judgment will be granted in favor of the school district, the City of Philadelphia, and the individual defendants in their official capacities on the merits of the plaintiffs' claims under § 1983 because Page failed to establish a genuine issue of material fact and the defendants are entitled to judgment as a matter of law.

### B. Section 1981

As for Page's claim under § 1981, the school district defendants argue that Page has produced no evidence of discrimination based on her Native American heritage. The city defendants argue that Page has no evidence of racial animus or that she was engaged in one of the statutorily protected activities to sustain a claim under § 1981.

Section 1981 provides that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

■ Racial animus is a necessary element of a claim under § 1981. *See Springer v. Seaman*, 821 F.2d 871, 880 (1st Cir.1987) (citing *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). The plaintiffs clearly have presented no evidence of intentional discrimination on the part of the defendants based on Raymond and April Page's Native American heritage; the plaintiffs assert that they experienced trouble in their neighborhood based on their heritage. Thus, summary judgment will be granted to all defendants on this claim. *See General Building Contractors*, 458 U.S. at 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) ("We conclude, therefore, that § 1981 .... can be violated only by purposeful discrimination.")

### C. Section 1988

Section 1988 provides that a "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" in an action to enforce § 1981 or § 1983. Because the plaintiffs have failed to sustain their claims under

---

**6.** In their amended complaint, the plaintiffs list that their injuries were caused by, among other factors, the breach of the contract between the plaintiffs and each of the defendants. The school district defendants argue that the alleged breach of contract does not support the plaintiffs' federal claims. The plaintiffs do not pursue such a theory in their response to the motions for summary judgment and do not mention their breach of contract allegations at all. This Court concludes that a breach of contract claim cannot be the basis of liability under § 1983, *see Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir.1992), and the plaintiffs have presented insufficient evidence to survive summary judgment on an independent state law breach of contract claim.

§ 1983 and § 1981, summary judgment will be granted to the defendants on their claim under § 1988.

### D. State Law Claims

The defendants argue that to the extent that the amended complaint alleges claims for intentional infliction of emotional distress in ¶¶ 29(k), 31(f), 33(f), 35(g), 37(f), and 39(e), they are entitled to summary judgment on the plaintiffs' state law claims.

 The school district defendants argue that the plaintiffs' state claims are barred by statutory immunity under 42 Pa.C.S. § 8541 *et seq.* Under § 8542(a)(2), local agencies are immune for willful misconduct. Under § 8542(b), local agencies are immune for acts of negligence, except for limited exceptions which are inapplicable here. Thus, the City of Philadelphia and the School District of Philadelphia are immune under Page's allegation of intentional infliction of emotional distress. *See Weissman v. City of Philadelphia,* 99 Pa. Cmwlth. 403, 513 A.2d 571 (1986).

 Although state employees are immune from claims of negligence under § 8545, they may be liable for willful misconduct under § 8550. Here, however, the plaintiffs have not alleged or produced evidence of any affirmative or intentional conduct by the individual defendants that caused injury to April Page; the allegations and evidence against the defendants are of their omissions to act. Thus, the plaintiffs' claims for intentional infliction of emotional distress will not survive this motion for summary judgment. *See Collier by Collier v. William Penn School District,* 956 F.Supp. 1209, 1217 (E.D.Pa.1997) (applying Pennsylvania law).

### IV. CONCLUSION

Based on the foregoing, I conclude the defendants are entitled to judgment as a matter of law on all of the plaintiffs' claims. Accordingly, the motions will be granted. An appropriate Order follows.

### ORDER

**AND NOW,** this 14th day of April, 1999, upon consideration of the motion of defendants the School District of Philadelphia, Marty Wharton, Harry J. Gafney, and R. Waldman ("the school district defendants") for summary judgment (Document No. 38), the motion of defendants Officer Zulka and the City of Philadelphia for summary judgment (Document No. 39), the response by the plaintiffs April Page, by her parents, Raymond and Georgene Page, and by their own right (Document No. 41), and the reply of the school district defendants (Document No. 42), having found and concluded that the plaintiffs have not established a genuine issue of material fact and that the defendants are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56, and based on the reasons given in the foregoing Memorandum, it is hereby **ORDERED** that the motions are **GRANTED. JUDGMENT IS ENTERED** in favor of the defendants and against the plaintiffs on all of their claims.

This is a final Order. The clerk is directed to close this file.